OPINION OF THE COURT

Per Curiam.

We hold that once a suspect in custody requests the assistance of counsel, he may not be questioned further in the absence of an attorney. We intend by our holding to make it clear that an uncounseled waiver of a constitutional right will not be deemed voluntary if it is made after the right to counsel has been invoked.
Defendant Frederick Cunningham was tried and convicted of murder in the second degree as a result of his alleged participation in a gas station robbery in which a service attendant was shot to death. One of the most damaging pieces of evidence offered against him at trial was a statement he had given to the police on the night he was arrested. Defendant made a pretrial motion to suppress the statement as being involuntarily made, but the trial court denied the motion, finding that the statement was in all respects voluntary. Defendant’s conviction was subsequently affirmed, without opinion, by the Appellate Division. We reverse because we conclude that the trial court’s finding that the inculpatory statement was "voluntary” is not supported by the facts.
Defendant was apprehended at his home at about 7:00 p¡m. on the evening of March 7, 1975. He was taken to police headquarters and promptly given the Miranda warnings (Miranda v Arizona, 384 US 436). Although he initially agreed to *206 speak with the police concerning his activities on the day of the robbery, he gave them no incriminating information at this point in the questioning.
Between the hours of 8:00 p.m. and 10:30 p.m., defendant spoke casually with the police officers, but there was no discussion of the robbery and shooting. Defendant was not handcuffed or placed under any unwarranted pressure during this period.[1] At approximately 10:30 p.m., defendant was informed that he was formally being placed under arrest and was again given Miranda warnings. It was at this point that defendant told the police that he was unwilling to sign a waiver of his constitutional rights and that he wished to consult with an attorney. In response to this request, the police officers told defendant that he would be permitted to speak with an attorney after he had been "booked” and arraigned. The interview was then terminated, and defendant was formally "booked” and placed in a jail cell. The police made no effort to obtain an attorney for defendant while he was awaiting arraignment.
At about 1:30 a.m., defendant called police officers to his cell and told them that he wished to make a statement. When he was taken from his cell, given additional Miranda warnings and asked to sign a written waiver form, however, defendant once again balked, reiterating his desire to consult with a lawyer. As had occurred earlier in the evening, the police immediately cut off the questioning and started to return defendant to his jail cell. As they proceeded through the public waiting room on the way back to the cell, defendant spotted his wife, who had been sitting in the police station ever since her husband was arrested earlier that evening. Defendant asked for and received permission to confer with her in private for a few moments. When he emerged from the conversation, defendant indicated that he had changed his mind and was now willing to speak with the police without the aid of an attorney. Thereafter, defendant signed a preprinted form waiving his constitutional rights and made the inculpatory statements which he later sought to have suppressed.
*207 In determining that these statements should have been suppressed, we recognize that the United States Supreme Court has not yet definitively described the conditions under which a defendant may subsequently waive his right to counsel after he has unequivocally asserted the right. Although the court has stated: "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present” (Miranda v Arizona, 384 US 436, 474, supra), it has never firmly held that a suspect in custody may not change his mind and make an effective uncounseled waiver after he has invoked his right to counsel (see Michigan v Mosley, 423 US 96, 101, n 7; People v Grant, 45 NY2d 366, 373-375). As we recently noted in Grant (supra, at pp 375-376), the most that can be discerned from the Supreme Court’s decisions to date is that a waiver of a constitutional right will not be deemed "voluntary” unless the police have "scrupulously honored” the suspect’s prior assertion of his rights (see People v Dean, 47 NY2d 967; People v Clark, 45 NY2d 432; People v Munlin, 45 NY2d 427; People v Buxton, 44 NY2d 33).
Nonetheless, we find it unnecessary to anticipate how the Supreme Court would decide the present case under existing principles of Federal constitutional law, for we conclude that the issue presented here may be resolved by application of principles that are firmly rooted in our State’s constitutional and statutory guarantees of due process of law, the privilege against self incrimination and the right to the assistance of counsel (see People v Rogers, 48 NY2d 167; People v Settles, 46 NY2d 154; People v Hobson, 39 NY2d 479; People v Arthur, 22 NY2d 325; People v Donovan, 13 NY2d 148). This court has consistently exercised the highest degree of vigilance in safeguarding the right of an accused to have the assistance of an attorney at every stage of the legal proceedings against him (e.g., People v Blake, 35 NY2d 331; People v Di Biasi, 7 NY2d 544). Our special solicitude for this fundamental right is based upon our belief that the presence of an attorney is the most effective means we have of minimizing the disadvantage at which an accused is placed when he is directly confronted with the awesome law enforcement machinery possessed by the State (People v Settles, supra, at p 161; People v Hobson, supra, at p 485). Recognizing that the preinterrogation warnings mandated by Miranda v Arizona (384 US 436, supra) cannot ensure that an accused will not "waive” an important constitutional right out of ignorance, *208 confusion or fear, we have held that, in certain situations, the right to counsel in New York includes the right of an accused to have an attorney present while he is considering whether to waive his rights. Such a rule, we have stated, "breathes life into the requirement that a waiver of a constitutional right must be competent, intelligent and voluntary” (People v Hobson, supra, at p 484).
The evolution of this aspect of the right to counsel has been traced in a number of opinions and scholarly articles (e.g., People v Rogers, 48 NY2d 167, supra; People v Settles, 46 NY2d 154, supra; People v Hobson, 39 NY2d 479, supra; 5 Fordham Urban LJ 401, 409; 52 St John’s L Rev 485, 505-511; 51 St John’s L Rev 201, 216-222). Basically, there have been two distinct lines of cases in which the right to counsel has been said to attach "indelibly” (see People v Settles, supra, at p 165) so that the right may not be waived outside the presence of the defendant’s attorney. In the first group of cases, we have said that an "indelible” right to counsel attaches upon the commencement of formal adversary proceedings (e.g., People v Settles, supra; People v Di Biasi, 7 NY2d 544, supra; cf. People v Coleman, 43 NY2d 222). Thus, after a suspect has been indicted (People v Waterman, 9 NY2d 561; see People v Settles, supra; People v Hobson, supra) or arraigned (People v Meyer, 11 NY2d 162; see, also, People v Bodie, 16 NY2d 275) or charged in a felony complaint (People v Samuels, 49 NY2d 218), he cannot make an effective waiver of his rights to remain silent and to have the assistance of counsel unless his attorney is present at the time of the waiver. This is so even in instances where the accused has neither retained nor requested an attorney (see People v Settles, supra).
In a second line of cases, we extended the "indelible” right to counsel to cases in which formal adversary proceedings have not yet been commenced, but we limited its application to suspects in custody who had already retained or been assigned counsel to represent them on the specific charge for which they were being held. This line of cases had its roots in our decision in People v Donovan (13 NY2d 148, supra), in which we held that principles of fundamental fairness are violated when a defendant in custody is interrogated "after he or the lawyer retained by him * * * has requested that they be allowed to confer together” (id., at p 153). We subsequently elaborated upon the Donovan principle, holding that an ac *209 cused in custody need not demand or be denied access to his retained counsel in order for the rule to be applicable (People v Friedlander, 16 NY2d 248; People v Gunner, 15 NY2d 226). Finally, in People v Arthur (22 NY2d 325, supra), we dispelled any lingering doubts concerning the circumstances under which a represented defendant may make an effective waiver of the right to counsel when we held that the police may not obtain such a waiver in the absence of counsel once they know or have reason to know that an attorney has become involved in the case.
Although the rule articulated in the Donovan-Arthur line of cases at one time appeared to have fallen out of favor (see People v Robles, 27 NY2d 155, cert den 401 US 945), its continued vitality was unreservedly reaffirmed in People v Hobson (39 NY2d 479, supra). Indeed, we recently reiterated our commitment to the rule in People v Rogers (48 NY2d 167, supra), in which we rejected the distinction that had been developed in cases such as People v Taylor (27 NY2d 327) and People v Hetherington (27 NY2d 242) and held that the "indelible” right to counsel applies to a represented defendant in custody whether or not his attorney was retained or appointed to represent him on the specific charge for which he is being questioned (see, also, People v Ermo, 47 NY2d 863; People v Carl, 46 NY2d 806).
Our holding today represents but a logical extension of these principles. When an unrepresented individual who is being held in police custody invokes his right to the assistance of counsel as defendant did here, he is, in effect, "expressing] his own view that he is not competent to deal with the authorities without legal advice” (Michigan v Mosley, 423 US 96, 110, n 2, supra [White, J., concurring]). Such an individual has no less need for the protections afforded by counsel than does an individual who, by happenstance, has previously secured the services of an attorney. Indeed, it makes little sense to say that a represented defendant in custody cannot effectively waive his right to counsel in the absence of counsel, while at the same time holding that an individual who has not yet secured an attorney but who has nonetheless requested the services of one can subsequently make an informed and voluntary decision to waive his rights without the advice of a lawyer (see People v Settles, 46 NY2d 154, 164, supra). Such a rule would impose an undue disadvantage upon those defendants who either are not affluent enough to have had regular *210 dealings with an attorney prior to being arrested or have not had previous occasion to enjoy the services of appointed counsel in an unrelated criminal matter.
We reject the notion that the right to have the assistance of counsel during custodial interrogation can be made to turn upon the fortuitous circumstance of the defendant having had an attorney prior to his arrest. Instead, we reaffirm our position that the right to counsel in this State includes the right of an accused to have the advice of counsel before making the decision to waive either his privilege against self incrimination or his right to the assistance of an attorney, so that once a defendant in custody invokes his right to counsel, all of the guarantees implicit in that right are brought into play, and a subsequent waiver of rights outside the presence of counsel cannot be given legal effect.[2]
Accordingly, we find that the inculpatory statements made by defendant in the instant case should have been suppressed. On at least two occasions, defendant unequivocally stated his desire to consult with an attorney before speaking to the police about the crime for which he was being held in custody. Although he subsequently indicated his willingness to forego his right to counsel without prompting from the police, his decision cannot be deemed to represent an informed choice, since it was made in the absence of requested counsel. Having asserted his right to counsel, defendant was entitled to have the benefit of an attorney’s advice before deciding whether to waive that right, and any statement obtained in violation of that principle should have been suppressed.
For the foregoing reasons, the order of the Appellate Division should be reversed, the challenged statement suppressed and the case remitted for further proceedings on the indictment.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Meyer concur in Per Curiam opinion.
*211 Order reversed, etc.

. Defendant contended at the suppression hearing that he began to suffer symptoms of drug withdrawal shortly after he arrived at the police station. The Trial Judge, however, made a factual determination that whatever discomfort defendant was experiencing had not affected his capacity to make an informed and voluntary decision to waive his rights to remain silent and to have the advice of counsel.

. The inculpatory statements at issue in this case were made in the course of an extended discussion between defendant and the police and therefore cannot be considered to have been genuinely "spontaneous” (People v Maerling, 46 NY2d 289). We note that our holding today does not affect the principle established in People v Kaye (25 NY2d 139) that a genuinely "spontaneous”, blurted-out admission need not be suppressed, even where the admission is made in the absence of retained or appointed counsel (see People v Lynes 49 NY2d 286).