Fuchsberg, J.
(dissenting). To set this case in its proper perspective, it is essential to point out that the Grand Jury’s target was the subject of prostitution in Onondaga County generally; in other words, the promoters of that illegal activity, whether working singly or in conspiracy, were the most likely candidates for indictment. Obviously, the payment of attorney’s fees on behalf of one or more prostitutes might be construed as an indication that the benefactor was involved in wrongdoing. This kind of incrimination is precisely what the petitioning attorneys sought to avoid.
Beyond that, it is also crucial to note that the name of the only "third party” the District Attorney appears to have had reason to connect to the petitioners was already known to the authorities. More so, the petitioners conceded in open court that they knew this individual and asserted, without contradiction, that they had represented him up until his arrest several months earlier on charges intimately related to the Grand Jury’s investigation.
What more they could do to carry the burden of proving the existence of an attorney-client relationship is hard to see. The attorneys are officers of the court, and the prosecution does not question their bona ñdes. Moreover, the relationship between attorney and client most often is one-to-one, and there might be no other nonconfidential evidence of its existence *72 short of haling the client into court and seeking a waiver of immunity.
In view of these circumstances, it is apparent that the interrogation of the attorneys was not for the purpose of uncovering previously unknown leads, but in order to get them to produce hard evidence against their former client that would support an indictment. To condone this strategem is to tolerate a completely unjustified abuse of the principle of safeguarding the confidentiality of communications between attorney and client.
It would be superfluous at this late date to retrace the many, varied and time-honored sources of the attorney-client privilege (see, generally, 8 Wigmore, Evidence [McNaughton rev, 1961], §§ 2290, 2291). Suffice it to note that it finds expression in statute (CPLR 4503) and ethical code (Code of Professional Responsibility, EC- 4-1) and is strongly rooted in the constitutional right to'counsel (US Const, 6th Amdt; NY Const, art I, § 6). We need look no further than the sweeping nature of our series of recent rulings in right to counsel cases for a reflection of the central role the right plays in securing justice under law (see People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479; People v Settles, 46 NY2d 154; People v Maerling, 46 NY2d 289; People v Garofolo, 46 NY2d 592; People v Rogers, 48 NY2d 167; People v Cunningham, 49 NY 2d 203; People v Marrero, 50 NY2d 56.) The adversarial nature of our legal system puts a premium on free and unconstrained access to legal advice and, in so doing, re-emphasizes how essential it is that we do not slacken in our support for the strong public policy favoring confidentiality of attorney-client communications.
To deny the privilege here drastically undermines its efficacy as a means of promoting consultation with counsel and informed participation in the legal process. In balancing the prosecution’s need for the information against the importance of the privilege, the scale clearly tips in favor of confidentiality. Foremost is the recognition that the third party’s payment of counsel fees is no less a communication intended to be kept secret than would be his verbal admission to counsel that he was a promoter of prostitution (cf. United States v Pape, 144 F2d 778, 783 [Learned Hand, J., dissenting]). The client’s failure to make an express request that the information not be disclosed does not make it any less confidential. And, even cases holding the identity of the payor of a fee and the *73 amount thereof not protected by the privilege acknowledge that confidentiality nonethless prevails when the facts may be seen as some acknowledgment of guilt by the client as to the very matter for which legal advice was sought in the first place (see Matter of Michaelson, 511 F2d 882, 888; Colton v United States, 306 F2d 633, 637; see, also, Matter of Grand Jury Proceedings [Lawson], 600 F2d 215, 218; Matter of Grand Jury Proceedings [Jones], 517 F2d 666, 672; 97 CJS, Witnesses, § 283, subd e, p 803).
Moreover, the prosecution is not entitled to pierce the privilege simply because it is an easier means of obtaining information diligent investigation would nonetheless turn up. This is especially true where the confidential representation, could provide a vital link in the chain leading to conviction (see Baird v Koerner, 279 F2d 623; see, also, Matter of Kaplan [Blumenfeld], 8 NY2d 214). There is little doubt here that this identifying information was precisely the goal of the District Attorney in seeking to pry into matters as to which he already had significant independent evidence. “That [the privilege’s] enforcement at times may frustrate the administration of justice will not suffice alone to allow for its breach; indeed, its very purpose may be to keep secure the imparting of information which the State would, if known to it, use to its advantage” (Matter of Jacqueline F., 47 NY2d 215, 226 [my dissent]).
Because I am unable to agree that the prosecution’s need for this information outweighs the interest of attorney and client in preserving a confidentiality reasonable in scope (see Matter of Michaelson, 511 F2d 882, 894, supra [Merrill, J., dissenting]), I would reverse the order from which this appeal is taken.
Chief Judge Cooke and Judges Gabrielli, Jones, Wachtler and Meyer Concur with Judge Jasen; Judge Fuchsberg dissents and votes to reverse in a separate opinion.
Order affirmed.