■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN MACKENZIE, Appellant. — Appeal by defendant from a judgment of the County Court, Nassau County, rendered September 16, 1976, convicting him of murder in the second degree (felony murder), manslaughter in the first degree, burglary in the second degree, grand larceny in the second degree, criminal possession of a weapon in the third degree, possession of burglar's tools and unlawful possession of noxious material, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. The facts have not been considered. On the morning of October 7, 1975, at approximately 2:30 A.M., the Nassau County Police observed a suspicious looking car parked behind a clothing store on Hempstead Avenue, West Hempstead. Upon investigation, it was discovered that the rear window of the premises was open. A bystander who had heard noises emanating from the premises and observed, for approximately 20 to 30 seconds, a man attempting to break out, went to the rear and informed the officers of what he saw. Thereupon, one of the officers, Matthew Giglio, was dispatched to cover the front of the store. A man emerged from the front of the store and, upon being confronted by Officer Giglio, turned and fired a shot, which eventually proved fatal to Giglio. Meanwhile, the officers had apprehended a woman, Colleen Irby, behind the store, and were questioning her when the shot rang out. She escaped when the officers ran to the front, but was later apprehended. It was subsequently ascertained that she was defendant's wife. The first bystander, who had been joined by another individual, saw the

shooting, and they both gave descriptions of the suspect to the police. A search of the car parked behind the clothing store revealed, *inter alia,* defendant's drivers license. Approximately seven hours later, a team of police, conducting a search of the immediate area, found defendant hiding under a tarpaulin in the loft of a private garage. Upon discovery, defendant volunteered, "I'm sorry. I'm not the one you want. Its Gargano *[sic]*." After ascertaining his identity, defendant was informed that he was under arrest and given his *Miranda* warnings. While being escorted to the "command post" which had been set up at the scene of the crime, defendant stated, "I want a lawyer." He was then turned over to detectives for questioning. Prior to interrogation, he was again given his *Miranda* warnings and asked if he understood them. He replied that he did. Thereupon, he agreed to answer questions without having an attorney present. Defendant stated that he participated in the burglary but that he was accompanied by another individual, Galgano. He contended that he was in the store when he heard a shot, and he presumed that his accomplice had shot the officer. One of the detectives informed defendant that they knew he was lying. He was told that they had eyewitnesses, his car, his gun, and that his wife had told a different story. Defendant was then permitted a reunion with his wife who told him, in the presence of the police, that she had told the truth and he should do the same. Defendant then stated, "I shot the guy. I didn't know it *[sic]* was a cop. There was no Galgano there." He then agreed to make an oral statement. This was reduced to a written statement, which was preceded by *Miranda* warnings. He also gave a statement to an Assistant District Attorney, again prefaced by *Miranda* warnings, and made inculpatory remarks to an officer during processing. All of these statements were ruled admissible following a pretrial hearing. It is undisputed that defendant asked for an attorney prior to being turned over to the detectives for interrogation. It is clear that once an accused invokes his right to counsel any purported waiver of that right in the absence of counsel is ineffective, and any statements in response to custodial interrogations uttered in the absence of counsel are inadmissible at trial *(People v Cunningham,* 49 NY2d 203). That rule has been applied retroactively to cases, such as the one at bar, pending at the date of the decision in *People v Cunningham (People v Prince,* 50 NY2d 883; *People v Gordon,* 77 AD2d 659). Although defendant's statements uttered prior to his request for counsel were spontaneous and therefore admissible (see *People v Rogers,* 48 NY2d 167; *People v Kaye,* 25 NY2d 139), we find that all of his subsequent statements, both oral and written, were the product of custodial interrogation, and taken in violation of his right to counsel (see *People v Cunningham, supra; People v Buxton,* 44 NY2d 33). We are not swayed by the People's contention that the rule posited in *People v Cunningham (supra)* interferes with an accused's constitutional right to self-representation (see *Faretta v California,* 422 US 806). Under the New York rule, there is no bar to an accused proceeding *pro se* provided there is a knowing and intelligent waiver of the right to be represented by counsel *(Miranda v Arizona,* 384 US 436). However, once an accused has given an indication that he does not wish to proceed without the assistance of counsel that request must be honored before any further custodial interrogation occurs *(People v Cunningham, supra).* Neither are we convinced that the admission of defendant's statements at trial was harmless error. A constitutional error, such as this, may be harmless only if there is no reasonable possibility that the erroneously admitted evidence contributed to the conviction, that is, if it is harmless beyond a reasonable doubt *(Chapman v California,* 386 US 18, 22-24; *Fahy v Connecticut,* 375 US 85, 86; *People v Jones,* 47 NY2d 528; *People v Almestica,* 42 NY2d 222). While the other evidence of defendant's guilt was strong, including the testimony of two eyewitnesses *(People v Brathwaite,* 76 AD2d 931), the nature of the statements admitted, full confessions, renders it very difficult to exclude the possibility that

the statements contributed to the finding of guilt. Accordingly, a new trial is necessary. As the People have conceded that the suppression of defendant's confessions would deprive them of any evidentiary basis for admitting the can of mace received into evidence at the first trial at any subsequent trial, it is unnecessary for us to pass separately upon that issue. We would note, however, that the hearsay testimony of Detective Gulla regarding certain statements allegedly made to him by the defendant's wife (Colleen Irby) was improperly admitted to establish the defendant's ownership of certain items which had been recovered by the police during the course of their investigation. We have considered defendant's remaining contentions and find them to be lacking in merit. Lazer, J. P., Mangano, Gulotta and Cohalan, JJ., concur.