Jasen, J.
(dissenting). I must dissent. The majority has today created an entirely new rule of law, to wit: that one who is suspected of having committed a crime and who *33 is not in custody, not indicted, not arraigned and not even formally accused by anyone, cannot waive his right to counsel, after being advised of his constitutional rights, in the comfort and quiet of his own home in the presence of police officers whom he himself invited to remain there. The purported legal basis for such a rule is that the suspect’s right to counsel had somehow “indelibly” attached merely because defendant had retained an attorney to counsel him during the ongoing investigation. In my opinion, such a rule is not supported by logic, common sense, need or the prior decisions of this court and I cannot support its acceptance into the law of this State.
At the outset, it should be made clear that I am not suggesting that we retreat in any way from the expansion of the right to counsel which this court, in recent years, has undertaken (see, e.g., People v Arthur, 22 NY2d 325; People v Hobson, 39 NY2d 479) or from the even newer concept of “indelible” attachment of the right to counsel which contemplates that in certain situations no effective waiver of counsel can be had in the absence of counsel (see, e.g., People v Cunningham, 49 NY2d 203; People v Settles, 46 NY2d 154). Certainly, the doctrine of stare decisis, if it is to mean anything at all, must protect such relatively young precedents from being cavalierly cast aside. However, the mere fact that the scope of protection afforded a criminal defendant by our State Constitution has been expanded in recent years cannot itself be viewed as a justification for all future expansions. If this were so, the creation and refinement of law through reasoned judicial decision would be a shallow process indeed. Instead, each new expansion of settled principles into virgin territory should at a minimum be accompanied by some demonstration that there is an imbalance or inadequacy in existing law which must be remedied by the creation of a broader rule. Each expansion must have its own justification. My dissent is, therefore, based not upon any conviction that existing precedent was wrongly decided, but rather upon my conclusion that there is no justification in law or logic for today’s expansion of the “New York right to counsel”.
As far as the law is concerned, the majority strives *34 mightily to connect the facts of the instant case to one of the many cases of recent vintage which address the scope of a criminal defendant’s right to counsel under the New York Constitution. (See NY Const, art I, § 6.) This effort, however, has been unsuccessful. Indeed, not a single case cited by the majority addresses the situation presented here where a person who is not in custody and not accused of any crime voluntarily waives his right to counsel.* Indeed, all of the “nonwaiver” cases cited by the majority fall into one of two general categories. Into the first category fall those cases where the person attempting to waive his or her right to counsel was in custody at the time of questioning. (See, e.g., People v Cunningham, 49 NY2d 203, supra; People v Townes, 41 NY2d 97; People v Hobson, 39 NY2d 479, supra; People v Arthur, 22 NY2d 325, supra.) Into the other fall those cases where the person attempting to waive his or her right to counsel had been formally accused in some manner of the commission of a crime. (See, e.g., People v Samuels, 49 NY2d 218; People v Settles, 46 NY2d 154, supra; People v Roberson, 41 NY2d 106.) While it is, of course, true that the court has not in its opinion always expressly noted the existence of these factors, it is also true that the court has never adopted a so-called “nonwaiver” rule where both of these have been absent.
Moreover, it has been expressly stated by the court in People v Hobson (39 NY2d 479, supra), a case upon which the majority relies in this and in countless other “non-waiver” cases, that custody is essential to the applicability of the rule. (39 NY2d, at p 483; see, also, People v McKie, 25 NY2d 19, 28.) Hence, existing law does not require reversal of defendant’s conviction in this case.
Nor do logic, common sense or considerations of sound public policy require such a result. Those charged with the enforcement of the criminal law have for centuries heavily depended upon the statements of the guilty in their quest *35 to identify and detain criminals. We do not know and we need not inquire into the motive which a murderer may have for coming forward with self incriminating admissions save to assure ourselves that these statements were not prompted by the coercive power of the State. In the instant case, there was no imbalance between the hapless individual and the organized State. Even if we were to assume that at one point defendant recognized his own incompetence to deal with the coercive power of the State and, as a result, retained a lawyer, the record is clear that he had a change of heart in this regard for reasons unconnected with any improper use of the State’s power. Perhaps the heavy burden of conscience motivated defendant. Perhaps a desire to confuse or mislead the police did so. In any case, defendant chose of his own free will to invite the State’s officers into his home, there to converse with them at his pleasure and only to the extent desired. There is not the tiniest hint in the record that the police activity in this case amounted to anything more than alert recognition of defendant’s willingness to speak and an offer of the opportunity to do so. This being so, it defies reason to hold that the police cannot accept defendant’s invitation into his home to listen to what he has to say. Indeed, to do so is to hold that the most talkative of criminals cannot ever discuss his case with the most reasonable of constables in the most -hospitable surroundings if he has ever previously discussed his case with a lawyer. This strains the concept of fairness “till it is narrowed to a filament.” (Snyder v Massachusetts, 291 US 97,122 [Cardozo, J.].)
In my opinion, the right to counsel was intended to place a buffer between the inartful defendant and the organized State. It was not intended to protect the murderer from his conscience or from the natural pressures that the commission of such an awful act might have upon the mind of any man. Once a defendant is in custody or is formally accused, it may well be difficult, if not impossible, to distinguish between the various effects of the several pressures upon him. Thus, we may say at least that the State by virtue of the coerciveness inherent in the criminal process might have prompted any confession. Where, as here, no such factors *36 exist and we have before us only the picture of a man willing, for whatever reason, to face his questioners alone, no such evidence of coercion can be inferred. To hold that defendant cannot speak or that the police cannot listen in these circumstances and to reverse defendant’s murder conviction is to reward what most of our citizenry would consider to be good police work with public rebuke and to place yet another hurdle in the path of effective law enforcement. If the courts are to retain the respect of the people, our decisions must appear to be rational and fair, as well as practical. I cannot say this decision falls into either category.
Therefore, I would affirm the order of the Appellate Division.
Judges Jones, Wachtler, Fuchsberg and Meyer concur with Chief Judge Cooke; Judge Jasen dissents and votes to affirm in a separate opinion in which Judge Gabrielli concurs.
Order reversed, etc.

 The Appellate Division affirmed the suppression court’s finding that defendant was not in custody at the time he made the incriminating statements in issue. The question of whether custody exists is one of fact and we are unable to disturb this affirmed finding of fact unless there is no evidence in the record to support it. (See, e.g., People v Bryant, 50 NY2d 949.) This finding is not disputed by the defendant on this appeal.