THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
RONALD C. SMITH, Appellant.

Fourth Department, February 26, 1981

### APPEARANCES OF COUNSEL

*Rose H. Sconiers (Joseph Shifflett* of counsel), for appellant.

*Edward C. Cosgrove, District Attorney (Timothy Harvey* of counsel), for respondent.

### OPINION OF THE COURT

HANCOCK, JR., J.

We hold that knowledge by police that a suspect, held on charges under investigation, may be represented by a lawyer on a pending unrelated charge for which he is not in custody, does not, without more, vitiate the suspect's uncounseled express waiver of rights (see *Miranda v Arizona,* 384 US 436) and render his incriminating oral statements inadmissible under *People v Rogers* (48 NY2d 167).

Following the discovery of the lifeless body of Deborah Pike in front of an abandoned warehouse in Buffalo at about 5:30 on the morning of July 24, 1979, Buffalo police learned from witnesses that defendant had left a tavern with the victim at approximately 3:30 that morning. In the early evening of July 30, 1979, Sergeant Gorski and Detective Suszek went to defendant's residence to question him. After receiving his *Miranda* warnings, defendant expressly waived his constitutional rights. When defendant admitted that on the morning of the murder there had been blood on the seat of the car he had been driving, the officers placed him under arrest. During questioning at the police station, defendant, after presenting various inconsistent exculpatory stories, finally admitted that he had left the bar with the victim and that he "vaguely remember[ed]" hitting her. He said that he did not recall killing her but that he knew that he had done "something wrong."

At the *Huntley* hearing *(People v Huntley,* 15 NY2d 72) Sergeant Gorski testified that before questioning defendant he had checked the computer printout of his prior criminal record. It showed three arrests, the most recent of which (for a sodomy charge) was on November 27, 1978. The printout did not show the disposition of any of the charges. Although he said that he assumed that defendant had a lawyer on the sodomy charge, Sergeant Gorski stated that he did not know this to be so, nor did he know anything concerning the status of the case. At no time did defendant indicate that the charge was still pending, that he had an attorney for that or any other matter, or that he wanted an attorney. Defendant, who did not testify, introduced no evidence contradicting Sergeant Gorski's testimony. In a *Sandoval* hearing *(People v Sandoval,* 34 NY2d 371) held contemporaneously with the *Huntley* hearing it appeared that the sodomy charge against defendant was still pending in Erie County.

Trial Term denied defendant's motion to suppress his oral statements, finding that defendant was "intelligent" and "familiar with the criminal justice system", that he had made a knowing express waiver of his constitutional rights, and that "[t]he police were unaware that defendant was represented on a pending unrelated charge and there

was no evidence indicating that they could have easily ascertained that fact." The court held that *People v Rogers (supra)* "is not controlling in a case where the police neither had knowledge of nor were apprised of the representation." (Accord *People v Servidio,* 77 AD2d 191.) The court's refusal to suppress these statements, defendant argues, presents an error requiring reversal of his conviction of murder, second degree, and manslaughter, first degree. We disagree.

We hold that Sergeant Gorski's awareness of the possible pendency of the unrelated criminal proceeding against defendant, even if accepted as the equivalent of knowledge that defendant was then represented by a lawyer on that matter, would not invalidate defendant's uncounseled waiver of his rights in the matter under investigation. Defendant's argument to the contrary presupposes the existence of a rule that police knowledge of a suspect's representation in an unrelated pending criminal proceeding invariably without more, gives rise to a nonwaivable right to counsel (see *People v Bell, supra; People v Rogers, supra; People v Hobson,* 39 NY2d 479; *People v Arthur,* 22 NY2d 325; *People v Donovan,* 13 NY2d 148) in other criminal matters upon which he may later be taken into custody and interrogated. We do not so interpret the law. In view of our holding we do not reach the question of whether Sergeant Gorski had constructive knowledge of the actual pendency of the prior charge and defendant's representation thereon.

In *People v Rogers (supra,* p 170) the court, noting that it had "jealously guarded the individual's privilege against self incrimination and right to counsel" and had demanded "that these fundamental rights be accorded the highest degree of respect by those representing the State" extended the protection against self incrimination afforded by the *Donovan-Arthur-Hobson* rule to cover unrelated matters as well as those under investigation for which the accused has counsel. The court confirmed that *People v Taylor* (27 NY 2d 327) was no longer the law and held *(People v Rogers, supra,* p 169) : "[O]nce an attorney *has entered the proceeding,* thereby signifying that the police should cease questioning, a defendant in custody may not be further in-

terrogated in the absence of counsel. We may not blithely override the *importance of the attorney's entry* by permitting interrogation of an accused with respect to matters which some may perceive to be unrelated" (emphasis added). In *Rogers*, while the accused was in custody and represented by a lawyer on the matter under investigation, the police questioned him and obtained a statement in violation of his privilege against self incrimination with respect to an unrelated matter. The court's holding that the statement was inadmissible was predicated on the fact that the attorney had already entered the proceeding concerning the matter under investigation and for which the suspect was being held. In *Rogers*, the police knew that the accused had retained counsel to protect his constitutional right against self incrimination in the face of "the awesome and sometimes coercive force of the State" *(People v Rogers, supra,* p 173)*;* when so apprised, the court held, the police should not be permitted to exploit the suspect's manifested inability to deal with the authorities and, therefore, *all* questions must cease, even on unrelated matters. It is clear that in *Rogers* as in *People v Cunningham* (49 NY2d 203), *People v Grant* (45 NY2d 366) and *People v Buxton* (44 NY2d 33) it is the importance of the lawyer in safeguarding the suspect's privilege against self incrimination that is at the root of the holdings that the right to counsel of a suspect in custody who has retained or requested a lawyer is "indelible" or nonwaivable.

The *Rogers* extension of the *Donovan-Arthur-Hobson* rule serves to prevent the police from abusing their legal custody over the defendant for matters they are investigating by questioning him not about those matters but about other matters on which they might not have probable cause to hold him or have an opportunity to interrogate him. (See, e.g., *People v Strever*, 79 AD2d 888, where police sought improperly as in *Rogers* to exploit their custody over and to obtain incriminating statements from a defendant, who was in jail on a pending charge for which counsel had been assigned, by questioning him in the absence of the attorney not about the pending case but on unrelated matters; see *People v Carl*, 46 NY2d 806.)

In contrast, in the case before us the defendant while

being questioned in custody never manifested his need for assistance in safeguarding his right against self incrimination in the face of the "coercive influence of the State" *(People v Rogers, supra*, p 173) by requesting or even mentioning counsel. No attorney had "entered the proceeding" under investigation as in *Rogers*. On the contrary, the defendant, by expressly waiving his right to counsel, unequivocally represented to police that he neither needed nor wanted an attorney to protect him from self incrimination in the matters upon which he was being questioned. All that can be said is that the defendant had a lawyer in an unrelated matter, a fact which he apparently did not consider sufficiently important to bring to the attention of the police. Defendant now, after the fact, seeks to use the unrelated and unmentioned representation to rule out his admissions. We do not think that *Rogers* supports defendant's argument.

It must be noted that defendant's right to counsel which would have attached in the unrelated sodomy charge (and which he now seeks to use as protection in the totally separate matter under investigation) would not have arisen from defendant's manifested need for protection against self incrimination (US Const, 5th Amdt; NY Const, art I, § 6) but from his right (US Const, 6th Amdt; NY Const, art I, § 6) to be represented in pending criminal proceedings (see *Kirby v Illinois*, 406 US 682; *People v Samuels*, 49 NY2d 218; *People v Settles*, 46 NY2d 154). In *Rogers (supra)* the court was concerned with protecting the accused, who had retained a lawyer for the matter on which he was in custody, from self incrimination (as in *People v Cunningham, supra; People v Grant, supra;* and *People v Buxton, supra)* and extended the protection of the *Donovan-Arthur-Hobson* "indelible" right to counsel to any matters whether or not relevant to the investigation at hand. In *People v Samuels (supra)* and *People v Settles (supra)*, on the other hand, the concern of the court was to preserve the defendant's right to counsel in a criminal case "at all critical stages" of the prosecution *(People v Samuels, supra*, p 221, citing *People v Settles, supra)*. This "critical stage" right to representation is not founded on the need to protect the accused's rights during the investigation but arises at

the commencement of the criminal prosecution when "the adverse positions of government and defendant have solidified" and the "defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law" (*Kirby v Illinois, supra,* p 689). The "critical stage" right to counsel stems from and is limited to the particular criminal prosecution and no purpose would be served by its extension beyond that prosecution to other matters. Although there is no claim nor even a suggestion that defendant's right to representation in the critical stages of the pending sodomy proceeding could have been compromised by the subsequent investigation and questioning directed solely to the totally discrete murder charge, it is this "critical stage" right to counsel in the pending sodomy charge upon which he must rely. In effect, defendant urges that under *People v Rogers (supra)* his right to counsel at critical stages of the proceeding on the sodomy charge accompanies him beyond that charge as a continuing cloak of immunity in the form of an 'indelible right to counsel" which protects him thereafter in other matters against any possible violation of his privilege against self incrimination. Thus, defendant argues, although he did not assert his constitutional right to remain silent or his right to have counsel in the homicide investigation, but expressly waived them, his attached right to counsel in the critical stages of the pending sodomy prosecution renders his statements concerning the homicide inadmissible. Such a remarkable extension of a defendant's right to counsel under the Sixth Amendment of the United States Constitution and section 6 of article I of the New York Constitution we do not think was intended by *People v Rogers (supra)*.

Nor are there any logical or practical reasons or considerations of public policy supporting the application of the *Rogers* rule in these circumstances. The mere fact that defendant had exercised his Federal and State constitutional right to have counsel under different circumstances in the critical stages of some other proceeding, although completely unrelated and regardless of how long it may have been pending, certainly does not demonstrate any need for the assistance of counsel to safeguard his privilege against

self incrimination in the matter at hand. We cannot accept the mechanical application of *Rogers* urged by defendant: that in the total absence of any indication to the contrary the police may not accept at face value the defendant's express waiver of counsel as an affirmative representation to them that he does not consider that any lawyer he may have on an unrelated pending matter is representing him in the matter under investigation and that he does not desire any such lawyer or any other lawyer to enter the immediate proceeding on his behalf.

To hold here that the defendant could not, despite his expressed intention to do so, waive his constitutional rights would bring into question the effectiveness of the *Miranda* warnings and create a "paternalistic rule protecting a defendant from his intelligent and voluntary decisions about his own criminal case", which would " 'imprison a man in his privileges,' *Adams v. United States ex rel. McCann*, 317 U. S. 269, 280 (1942)" *(Michigan v Mosely*, 423 US 96, 109, WHITE, J., concurring). We do not believe that *Rogers* (48 NY2d 167, *supra)* should be stretched to this extreme. Such a holding would produce the absurd consequence of automatically transforming the fact of legal representation in any criminal matter into a shell of protection for the repeat offender with a criminal record which is unavailable to the uninitiated and perhaps naive and innocent first-time accused.

We note that the case at bar is clearly distinguishable from our recent decision in *People v Johnson* (79 AD2d 201) where, as in *People v Cunningham (supra)* and *People v Skinner (supra)*, the police had been made aware of the defendant's need for counsel to preserve her privilege against self incrimination in the matter they were investigating.

We hold only that, even if it could be said that the police, under the circumstances should be charged with "knowledge" of defendant's "critical stage" right to counsel in the sodomy prosecution, that "knowledge," without more, would not nullify defendant's express waiver of his privilege against self incrimination *(Miranda v Arizona*, 384 US 436, *supra)* in the unrelated homicide investigation so

as to make his incriminating statements therein inadmissible.

We have considered the other points raised by defendant and find them to be without merit. The judgment should be affirmed.

CARDAMONE, J. P. (concurring). I agree with the result reached by the majority. Under New York law, "once an attorney has entered the proceeding * * * a defendant in custody may not be further interrogated in the absence of counsel" *(People v Rogers,* 48 NY2d 167, 169). This rule applies even though the questioning concerns unrelated activities. More recently, it has been held that even noncustodial interrogation is forbidden where the defendant has invoked the right to counsel on "the matter about which * * * [he] is questioned * * * in the absence of a waiver of counsel made in the presence of the attorney" *(People v Skinner,* 52 NY2d 24). This rule of nonwaivability also applies to a suspect who has expressed the need for counsel *(People v Cunningham,* 49 NY2d 203). In the instant case, I would conclude that the defendant's right to counsel had not indelibly attached. The defendant was not being held on a charge for which an attorney had been retained. (cf. *People v Rogers, supra).* Moreover, the defendant had neither obtained counsel on the matter under investigation (cf. *People v Skinner, supra),* nor expressed a desire for an attorney (cf. *People v Cunningham, supra).* It could be argued that a logical extension of the principles enunciated in *Rogers* and *Skinner* requires a finding that the defendant's right to counsel was violated by virtue of the police interrogation. No case has yet held, however, that the right to counsel indelibly attaches simply by virtue of prior representation on an unrelated, pending criminal matter. Neither policy nor precedent requires such a broad extension of the right to counsel.

SIMONS, DOERR and MOULE, JJ., concur with HANCOCK, JR., J.; CARDAMONE, J. P., concurs in a separate opinion.

Judgment affirmed.