Jasen, J.
(dissenting). The majority, in holding that the “placing in front of the cell in which defendant was being detained furs stolen from the murder victim’s residence constituted interrogation”, interprets the “likely to elicit” test (see Rhode Island v Innis, 446 US 291, 303) too literally and mechanically, untempered by the purposes to be served thereby. Moreover, the majority fails to distinguish between the differing policies involved and the ramifications resulting where the suspect has sought the assistance of counsel — which defendant did not do here — as opposed to merely choosing initially to remain silent. (Cf. Brewer v Williams, 430 US 387, 397.) The proscriptions to be applied in each instance are not the same.
Because I strongly believe that the mere placing of evidence in front of defendant cannot be deemed an unconstitutional interrogation in violation of the right to remain silent, invoked upon the reading of Miranda warnings, I respectfully dissent.
After Miranda warnings were given and defendant chose not to answer questions, the police refrained from further *325 discussion with him. Defendant was not subjected to any questioning. He was not subjected to any browbeating, violence, threats or intimidation; no taunting, importuning, harassment or cajoling; no promises, inducement, deceit or trickery; no discomfort, humiliation, exhaustion or moral or religious suasion; nor, indeed, to any other form of compulsion or coercion. (See Miranda v Arizona, 384 US 436,448-458; cf. Oregon v Bradshaw, 462 US 1039,_, 77 L ed 2d 405, 413; Rhode Island v Innis, supra, at p 299.) Rather, upon viewing the stolen goods obtained from his accomplice and simply placed before him by the police, defendant insisted that he be permitted to speak in exchange for prosecutorial leniency. When informed that nothing could be promised, but that his explanation would be relayed to the District Attorney, defendant volunteered his alibi which was the subject of the suppression motion here in issue. Under these circumstances, I would hold that this police conduct did not constitute an impermissible interrogation.
The constitutional privilege against compulsory self-incrimination does not bar mere self:incrimination. It prohibits only that which is genuinely compelled — i.e., the result of coercion or overbearing of the will of the accused. (New York v Quarles, 467 US_,104 S Ct 2626, 2630-2632; United States u Washington, 431 US 181, 187-188; Michigan v Tucker, 417 US 433, 448.) Statements voluntarily made, regardless of how damning, are not proscribed. (United States v Washington, supra, at p 187; see, also, Miranda v Arizona, supra, at p 478.) Defendant does not claim, nor is there any indication in the record, that he was actually compelled by police conduct which in any way overcame his will to resist.
Moreover, the “likely to elicit” test invoked by the majority is not an explicit constitutional prescription mandating blind application in every case, regardless of the resulting absurdity under particular facts. (Cf. North Carolina v Butler, 441 US 369, 374-379; Michigan v Mosley, 423 US 96, 102-103.) Rather, it is an interpretive guideline to assist in determining whether certain police activity is the “functional equivalent” of an interrogation. (Rhode Island v Innis, supra, at p 302; see, also, Brewer v Williams, 430 *326 US, at p 399.) In turn, this latter formulation is itself a practical tool for applying the safeguards of Miranda, which themselves are not mandated by the Constitution either. (Michigan v Tucker, 417 US, at p 444; Miranda v Arizona, supra, at p 467.) Rather, even they are “prophylactic” (New York v Quarles, 467 US_, 104 S Ct, at pp 2630-2632) — i.e., “suggested” “measures to insure that the right against compulsory self-incrimination was protected.” (Michigan v Tucker, supra, at p 444; see New York v Quarles, supra, at p_, 104 S Ct, at pp 2630-2632.)
Ultimately, then, it is this right against compulsory self-incrimination, and not simply some felicitous tests uninformed by their policy purposes, which underlies Miranda and its progeny. It is that right which is at issue here and which should guide this court’s decision. In considering the facts in this case, “[c]ertainly no one could contend that the interrogation faced by [defendant — if it could reasonably be labeled as such — ] bore any resemblance to the historical practices at which the right against compulsory self-incrimination was aimed.” (Michigan v Tucker, supra, at p 444.)
While noninterrogatory statements of police officers and even their nonverbal actions may in some instances amount to unlawful interrogation of a suspect within the meaning of Miranda (see Rhode Island v Innis, supra, at p 299), nevertheless, not all “prompting” of any kind is constitutionally proscribed. (Id.; Edwards v Arizona, 451 US 477, 488 [Burger, Ch. J., concurring].) Thus, while the skillful employment of religious compulsion (Brewer v Williams, supra) and deceitful confidences (United States v Henry, 447 US 264) have been held to be impermissible “deliberate elicitations” (id., at p 270), the discussion of child-safety concerns in a suspect’s presence (Rhode Island v Innis, supra) and the advisement of the accused of additional charges being brought against him (Michigan v Mosley, supra) have been upheld.
Indeed, there is no rigid rule constituting “a blanket prohibition against the taking of voluntary statements or a permanent immunity from further interrogation, regardless of the circumstances, [for that] would transform the Miranda safeguards into wholly irrational obstacles to *327 legitimate police investigative activity, and deprive suspects of an opportunity to make informed and intelligent assessments of their interests.” (Michigan v Mosley, 423 US, at p 102 [emphasis added].) Where, for example, as here, there is a mere disclosure of information to a suspect bearing on his prior decision to remain silent — i.e., the government’s retrieving of the stolen goods — there is nothing in the Federal or State Constitution or case law barring that suspect from making an informed and voluntary reassessment of his decision and, thereafter, choosing to make a statement. (Id., at p 102; see, also, id., at pp 109-111 [White, J., concurring].)
To construe the mere placing of evidence before defendant — little more than a simple disclosure of information which might, in fact, contribute to an intelligent exercise of his judgment — as an impermissible interrogation is to attribute to that police conduct the qualities of coercion and overbearing of defendant’s will which it certainly was not. Such a construction, in my view, gives a tortured and unintended interpretation to the Miranda safeguards and the underlying privilege against compulsory self-incrimination. Indeed, in numerous cases involving analogous police conduct under circumstances similar to those presented here, Federal appellate courts have refused to regard the police actions as interrogations in violation of asserted Miranda rights. (See, for example, the following, all of which were decided subsequent to the United States Supreme Court’s definition of “interrogation” in Innis: United States v Guido, 704 F2d 675 [CA 2d] [suggestion that defendant cooperate initiated by government agents, not impermissible interrogation]; United States u Criswell, 696 F2d 636 [CA 8th] [placing defendant in an office where persuasive photographs were displayed, not impermissible interrogation]; United States v Thierman, 678 F2d 1331 [CA 9th] [conversation in defendant’s presence about the likelihood that the investigation would involve his family and girlfriend, not impermissible interrogation]; United States v Hackley, 636 F2d 493 [CA-DC] [explanation of the incriminating evidence against defendant, not impermissible interrogation]; see, also, the following which, although decided prior to Innis, have since been cited with approval *328 in the afore-cited cases: United States v Hart, 619 F2d 325 [CA 4th] [informing defendant that his cooperation would be relayed to the United States Attorney, not impermissible interrogation]; United States v Wilson, 571 F2d 455 [CA 9th] [informing defendant of the extensive evidence against him, not impermissible interrogation]; United States v Davis, 527 F2d 1110 [CA 9th], cert den 425 US 953 [showing defendant a photograph of himself participating in a bank robbery, not impermissible interrogation]; United States v Boston, 508 F2d 1171 [CA 2d], cert den 421 US 1001 [confronting defendant with the incriminating results of the search of his apartment, not impermissible interrogation]; United States v Hodge, 487 F2d 945 [CA 5th] [explanation of the incriminating evidence against defendant, not impermissible interrogation].) In accord with these decisions, and mindful of the purposes to be served and evils to be prevented by the Miranda safeguards and the privilege against compulsory self-incrimination, I believe that the police conduct in this case cannot fairly be deemed a proscribed interrogation.
Finally, the majority’s rigid application of the “likely to elicit” test ignores the significant distinctions between the right to remain silent and the right to assistance of counsel — only the former of which did defendant choose to exercise. Although he was advised fully in accordance with Miranda, defendant did not ask for counsel, invoke the right thereto, nor in any form indicate that he was awaiting counsel’s arrival or assistance. In fact, he repeatedly requested to speak with the District Attorney despite the absence of an attorney.
Defendant simply exercised his right to remain silent upon receiving the Miranda warnings, thereby foreclosing any further questioning until such time as he should voluntarily and freely decide otherwise. Whereas “additional safeguards are necessary when the accused asks for counsel” and, therefore, “interrogation [must] cease until an attorney [is] present” (Edwards v Arizona, 451 US, at pp 484, 485), that is true “only if the individual [has] stated that he wanted counsel” (id., at p 485 [emphasis added]). (See, also, People v Cunningham, 49 NY2d 203; People v Grant, 45 NY2d 366.) Otherwise, “the accused may himself *329 validly waive his rights and respond to interrogation”. (Edwards v Arizona, supra, at p 484 [emphasis added].)
The “policies underlying the two constitutional protections [right to assistance of counsel and privilege against compulsory self-incrimination] are quite distinct” (Rhode Island v Innis, 446 US, at p 300, n 4) and, consequently, so too are the appropriate procedural safeguards. With regard to the right to counsel, “[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present.” (Miranda v Arizona, 384 US, at p 474 [emphasis added].) However, where an individual simply indicates his desire to remain silent, the situation is different. There is no “per se proscription of indefinite duration upon any further questioning”. (Michigan v Mosley, 423 US, at p 102; see, also, People v Grant, supra, at p 375; People v Cunningham, supra, at p 207.) Rather, as long as the individual’s “right to cut off questioning” is “scrupulously honored” (Miranda v Arizona, supra, at pp 474, 479 [emphasis added]), he may at any time make an “informed and intelligent” reassessment of his interests and permit questioning to resume. (Michigan v Mosley, supra, at pp 102, 104.)
In deciding that the entirely innocuous, nonverbal and noncoercive police conduct in this case amounted to unconstitutional interrogation by mechanically applying the “likely to elicit” test, the majority fails utterly to distinguish “between the procedural safeguards triggered by a request to remain silent and a request for an attorney”. (Michigan v Mosley, supra, at p 104, n 10, explaining Miranda v Arizona, supra, at p 474.) That distinction was made clear in Miranda and has been repeatedly recognized in its progeny. (See, e.g., Oregon v Bradshaw, 462 US 1039 [Rehnquist, J.], 1047 [Powell, J., concurring], 1051 [Marshall, J., dissenting]; Edwards v Arizona, 451 US, at pp 484-485 [White, J.], 491, n 1 [Powell, J., concurring]; United States v Henry, 447 US 264, 272-273 [Burger, Ch. J.], 282, n 6 [Blackmun, J., dissenting], 295-296 [Rehnquist, J., dissenting]; Rhode Island v Innis, 446 US, at p 300, n 4 [Stewart, J.]; Brewer u Williams, 430 US, at pp 397-398 [Stewart, J.], 424-426 [Burger, Ch. J., dissenting], 436-437, n 6 [White, J., dissenting]; Michigan v Mosley, *330 423 US, at pp 101-104, and nn 7, 10 [Stewart, J.], 109-110 [White, J., concurring].) Likewise, this court has acknowledged the same distinction. (See People v Grant, 45 NY2d, at p 375; People v Cunningham, 49 NY2d, at p 207.)
Here, the defendant expressed no view nor gave the slightest indication that he was incompetent to decide whether to permit a resumption of questioning without legal advice. (Cf. Michigan v Mosley, supra, at p 110, n 2 [White, J., concurring].) Rather, he simply asserted his desire not to speak with the police at the outset, and subsequently decided, without any coercion of any sort, to change his mind in light of the incriminating evidence placed before him. In my view, the prophylactic safeguards of Miranda and its progeny do not preclude an individual from thus making an informed and voluntary reassessment of his interests, and do not proscribe, as an impermissible interrogation, the kind of nonverbal, noncoercive, nonthreatening, ánd even nonbothersome police conduct at issue in this case.
Accordingly, I would affirm the refusal of both courts below to suppress the statements volunteered by defendant.
Chief Judge Cooke and Judges Jones, Simons and Kaye concur with Judge Meyer; Judge Jasen dissents and votes to affirm in a separate opinion; Judge Wachtler taking no part.
Order reversed, etc.