THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUSTIN CARRINO, Appellant. [22 NYS3d 116]—

Appeal by the defendant from a judgment of the County Court, Dutchess County (Greller, J.), rendered November 14, 2013, convicting him of predatory sexual assault, aggravated sexual abuse in the first degree (two counts), rape in the first degree, assault in the second degree (two counts), and criminal contempt in the first degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is reversed, on the law and the facts, that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials is granted to the extent that the statements made by the defendant after he unequivocally invoked his right to counsel are suppressed, and a new trial is ordered.

A threshold issue on this appeal is whether the defendant unequivocally invoked his right to counsel while he was being interrogated by the police such that any statements that he made to the police after doing so should have been suppressed (*see People v Harris*, 93 AD3d 58, 70 [2012], *affd* 20 NY3d 912 [2012]; *see also People v Cunningham*, 49 NY2d 203, 210 [1980]). Under the facts of this case, we find that the defendant unequivocally invoked his right to counsel during his interrogation by the police and that the admission at trial of statements made by the defendant after he invoked his right to counsel was constitutional error requiring a new trial (*see People v Harris*, 93 AD3d at 70-71).

In October 2012, in response to allegations made by the defendant's then-girlfriend (hereinafter the complainant) that the defendant had raped, assaulted, and sexually abused her, the police brought the defendant, in handcuffs, to a police barracks in Wappingers Falls. At the barracks, the defendant was placed in an interview room and advised of his *Miranda* rights by a police investigator at the beginning of a video-recorded interview (*see Miranda v Arizona*, 384 US 436 [1966]). Although the defendant was not handcuffed or restrained in the room, he was not free to leave. The defendant acknowledged that he understood his rights and agreed to be interviewed

regarding the complainant's allegations against him. When the police confronted the defendant with these allegations, he provided his version of certain events he claimed had transpired. He contended, among other things, that the complainant was drunk and lying, and that she would recant her story when she was sober.

During this interview, which lasted for almost three hours, the defendant referred to seeking an attorney three separate times. On the first occasion, approximately 45 minutes into the interview, in response to a question by the investigator, the defendant stated, "I have nothing to defend myself besides my . . . attorney I'm going to have to call now if [the complainant is] really pursuing charges." The investigator responded by stating that he would go check on how the complainant was doing and left the defendant alone in the room. The investigator returned to the room after approximately 10 minutes.

Thereafter, approximately 15 minutes later, when the defendant and the investigator were discussing the condition of the complainant's pajamas, the defendant indicated that the pajamas were in perfect condition. When the investigator asked, "What if they're ripped?," the defendant responded that, if so, then the complainant did it. He also said, "She's trying to burn me [and] I need to see private counsel or something. I need an attorney, because this is ridiculous." The interview was not stopped at that point, but, shortly thereafter, the investigator pointed out to the defendant that he had brought up "the attorney thing" and inquired as to the status of that request. The defendant replied, "I have to get [an attorney]. I have to call my Georgia guy and get one that's New York barred up here, I guess." The interview was not stopped at that point and continued, uninterrupted, until the defendant requested a bathroom break, which he was given.

Thereafter, the defendant was left alone in the interview room for approximately 50 minutes. The investigator then returned and inquired as to whether the defendant still wanted to take a polygraph test. The investigator followed this question by referring to the defendant's earlier request for an attorney: "You know, when you say, you know, earlier you wanted to call your lawyer, I need to make sure if you're going to call your lawyer and stop talking to us, you know, that's your right, but if you're just inquiring if you needed to talk to your lawyer—." In response, the defendant said he wanted to cooperate.

The defendant was then transported to a police facility in Millbrook. At that location, he was given a polygraph test and

questioned again for more than an hour by the investigator and another police officer. That interview was also video-recorded. During that interview, the defendant admitted, among other things, that he was a "pathological liar" and that he had lied earlier to the investigators regarding his drug use, and he asserted that his uncle, who was a congressman, would fix the situation. He also contradicted the version of events that he had provided in his earlier interview at the Wappingers Falls police barracks by now admitting that he had been fighting with the complainant regarding her plan to leave him, contending that fresh bruises and marks on the complainant's back had resulted when the complainant accidentally fell down the stairs at the time of their argument, and admitting that he had hit the complainant hard with a broom. Additionally, although the defendant had maintained in the earlier interview that, during the relevant time period, he and the complainant had "fooled around" but had stopped and he had not actually penetrated the complainant's vagina, during the interview at the Millbrook police facility, the defendant stated that he had penetrated the complainant's vagina in a forceful manner during sexual intercourse that he contended was consensual.

Thereafter, the defendant was arrested. Prior to trial, he moved to suppress the statements he had made to the police, contending, among other things, that the interrogation had been conducted in violation of his constitutional right to counsel. In an order dated July 16, 2013, made after a hearing at which the video recordings of the defendant's interviews were admitted into evidence, the hearing court denied that branch of his omnibus motion which was to suppress the statements, concluding that the defendant did not unequivocally invoke his right to counsel. At a jury trial, the defendant was convicted of predatory sexual assault, two counts of aggravated sexual abuse in the first degree, rape in the first degree, two counts of assault in the second degree, and criminal contempt in the first degree. The defendant appeals from the judgment of conviction, and the appeal brings up for review the denial of that branch of his omnibus motion which was to suppress his statements to law enforcement officials.

The Indelible Right to Counsel

"Whether the defendant unequivocally invoked his right to counsel is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request, including the defendant's demeanor, manner of expression, and the particular words found to have been uttered by the defendant" (*People v Harris*, 93 AD3d at 67; *see*

*People v Glover*, 87 NY2d 838, 839 [1995]). The issue is whether " 'a reasonable police officer in the circumstances would understand the statement to be a request for an attorney' " (*People v Harris*, 93 AD3d at 67, quoting *Davis v United States*, 512 US 452, 459 [1994]). Any indication by a police officer that he understood a defendant's statement to be a request for counsel is a factor to be considered in evaluating whether there was an unequivocal request for counsel (*see People v Porter*, 9 NY3d 966, 967 [2007]).

Once a suspect in police custody unequivocally requests the assistance of counsel, the suspect may not be asked any more questions in the absence of counsel (*see People v Harris*, 93 AD3d at 66; *see also People v Grice*, 100 NY2d 318, 320-321 [2003]; *People v Cunningham*, 49 NY2d at 210). "A defendant's unequivocal invocation of counsel while in custody results in the attachment of the right to counsel, indelibly so, meaning that, as a matter of state constitutional law, a defendant cannot subsequently waive the right to counsel unless the defendant is in the presence of an attorney representing that defendant" (*People v Harris*, 93 AD3d at 66; *see People v Grice*, 100 NY2d at 320-321; *People v Cunningham*, 49 NY2d at 210).

Turning to each of the defendant's statements regarding counsel, under the circumstances that existed at the time of the first statement, the defendant's request to speak to his attorney was equivocal; his request was prospective because the defendant posited his need for counsel as contingent on whether the complainant really was pursuing charges—an action that may or may not occur (*see People v Higgins*, 124 AD3d 929, 931 [2015]). Thus, the hearing court properly declined to suppress any statements made by the defendant in response to police questioning at that point.

However, the defendant's second statement, made approximately 25 minutes after his first mention of an attorney, stating that he "need[ed] to see private counsel" and that he "need[ed] an attorney," was an unequivocal invocation of his right to counsel (*see People v Harris*, 93 AD3d at 70; *see also People v Esposito*, 68 NY2d 961, 962 [1986]; *People v Cunningham*, 49 NY2d at 210). Shortly thereafter, the investigator evidenced his understanding that the defendant had requested counsel by querying the defendant about "the attorney thing." Although the People have characterized the investigator's query as an attempt to clarify whether or not the defendant was seeking counsel, the defendant's response to this query, stating "I have to get [an attorney]. I have to call my Georgia guy and get one that's New York barred up here, I guess,"

confirmed he had invoked his right to counsel. At the point when the defendant stated that he "need[ed] to see private counsel" and that he "need[ed] an attorney," the defendant's indelible right to counsel attached, and the questioning by the investigator should have stopped (*see People v Harris*, 93 AD3d at 66; *see also People v Esposito*, 68 NY2d at 962; *People v Cunningham*, 49 NY2d at 210). The investigator's understanding that the defendant had requested counsel was demonstrated by his question to the defendant about the status of "the attorney thing" and his comment that the defendant had earlier wanted to call his lawyer (*see People v Harris*, 93 AD3d at 70; *see also People v Porter*, 9 NY3d at 967). Since the defendant's right to counsel had indelibly attached, the investigator was "prohibited from questioning the defendant without first obtaining a waiver of his right to counsel in the presence of an attorney; the [investigator was] not permitted to cajole or otherwise induce the defendant to answer further questions without first affording the defendant an attorney" (*People v Harris*, 93 AD3d at 70). Thus, once the defendant unequivocally invoked his right to counsel, any waiver that he made of that right in the absence of counsel was ineffective (*see id.* at 66; *see also People v Esposito*, 68 NY2d at 962; *People v Cunningham*, 49 NY2d at 210). Accordingly, the defendant's statements made thereafter should have been suppressed (*see People v Esposito*, 68 NY2d at 962; *People v Cunningham*, 49 NY2d at 210).

Failure to Suppress Was Not Harmless Error

The failure to suppress the defendant's statements noted above was error of constitutional magnitude (*see People v Harris*, 93 AD3d at 71; *see People v Crimmins*, 36 NY2d 230, 240-241 [1975]), requiring reversal of the judgment of conviction and a new trial. "[H]owever overwhelming may be the quantum and nature of other proof, the error is not harmless under the Federal test if 'there is a reasonable possibility that the [error] might have contributed to the conviction' " (*People v Crimmins*, 36 NY2d at 240-241, quoting *Fahy v Connecticut*, 375 US 85, 86-87 [1963], and *Chapman v California*, 386 US 18, 23 [1967]). The error must be harmless beyond a reasonable doubt (*see People v Harris*, 93 AD3d at 71).

Here, there is a reasonable possibility that the admission into evidence of the statements the defendant made after he unequivocally invoked his right to counsel was an error that contributed to his conviction (*see id.*). The jury viewed a video recording of the defendant telling the police that he was a pathological liar, that he had lied to them earlier regarding his

drug use, and that his congressman uncle would fix the situation. The defendant also made multiple statements contradicting earlier statements that he made during the Wappingers Falls interview concerning the amount of force he used when he hit the complainant with a broom during the argument, the reason why the complainant had fresh bruises and marks on her back, and whether he penetrated the complainant's vagina during sexual activity that he contended was consensual. These statements not only inculpated the defendant with respect to the charges against him, but also put him in an unfavorable light as a liar and a drug user. Thus, there is a reasonable possibility that allowing the jury to consider the video-recorded statements that the defendant made after he unequivocally invoked his right to counsel was an error that contributed to his conviction (*see id.*).

The defendant's arguments regarding the legal sufficiency and weight of the evidence with respect to the counts of which he was convicted are without merit (*see People v Rivera*, 128 AD3d 1100, 1101-1102 [2015]). In light of our determination, we need not address the defendant's remaining contentions.

Accordingly, the judgment must be reversed, and that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials must be granted with respect to those statements he made after he unequivocally invoked his right to counsel. As the admission of those statements at trial was constitutional error, and the error was not harmless beyond a reasonable doubt, a new trial must be held. Dillon, J.P., Dickerson, Cohen and Duffy, JJ., concur.