■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v RICKIE BOLDEN, Appellant.—Appeal by defendant from a judgment of the County Court, Nassau County, rendered May 27, 1977, convicting him of attempted

murder, assault in the second degree and criminal impersonation, upon a jury verdict, and imposing sentence. Judgment reversed, on the law, and new trial ordered. Because of two substantial errors committed by the trial court which reach beyond the pale of harmless error, we are constrained to reverse the judgment of conviction and order a new trial. The crimes of attempted murder, assault in the second degree and criminal impersonation of which the defendant was convicted, occurred in Nassau County on May 9, 1974. These offenses involved the use of a firearm by the defendant upon the complainant, Anita Perry, a registered nurse who was returning from work. As the result of an investigation of an unrelated but somewhat similar incident which occurred in Queens County, the defendant was arrested approximately seven months later at about 7:40 A.M. on December 27, 1974 by New York City police officer Thomas McMahon at the Forest Hills apartment of Rachel Bloch, with whom the defendant was residing. The first question presented here is whether the defendant had requested the aid of counsel at the time of his arrest, and, if so, whether an inculpatory statement involving his possession of a gun, given to the arresting officer, concededly, in the course of interrogation concerning an unrelated matter, was impermissibly permitted to be received as evidence upon the trial. The facts insofar as they may pertain to this issue are as follows: As the defendant was being escorted, under arrest, from the apartment by Detective McMahon at about 8:30 A.M., there ensued a conversation between Rachel Bloch and the defendant. At a *Huntley* hearing the detective testified: "But on second recollection, your Honor, Rachel Bloch said, 'I'll call an attorney for you.' He said, 'Okay.' And he was satisfied with that." According to Detective McMahon's testimony at the trial, he described the conversation as follows: "Q. Now, when you were leaving the house do you recall Rickie Bolden saying to Rachel Bloch 'call my attorney,' do you recall that? A. No, he didn't say that. She said, 'Honey —', she said, 'I'll call an attorney for you.' He said, 'Okay, call a lawyer.' That's what he said. Q. Well, do you recall her saying, 'I'll call your attorney?' A. Yes, I heard her say that." They then proceeded to the police car where Detective McMahon read the *Miranda* warnings to the defendant, and when he was asked if he understood his rights and was willing to talk to the detective without a lawyer present, he answered in the affirmative. He then gave an oral statement in relation to his arrest for the crime committed in Queens County in which, *inter alia*, he denied that he shot Susan Schneider, the complainant in the Queens County prosecution. When Detective McMahon asked him, "What did you do with the gun?", he answered, "I don't have the gun anymore." He said, "I had a gun six months ago and I threw it away." This statement, although made in connection with an unrelated matter, constituted an admission that he possessed a gun at the time of the commission of the crime herein, which took place seven months before the interrogation. The record also discloses that Rachel Bloch called the attorney, Edgar Walker, after 9:00 A.M. on December 27, 1974 and that he arrived at the police station at about 11:30 A.M. that morning and represented the defendant at the lineup conducted on that day. We cannot share the view of the Trial Judge that "it is not clear from the testimony at the hearing as to who initiated the conversation nor, indeed, precisely what was said." We find that from the conversation above alluded to, which took place in the presence of the police officer, it was made manifestly clear that when the statement was given by the defendant, he had already expressed a desire to have an attorney and that within not more than two and one-half hours such attorney did appear upon the scene to represent him. The trial

court also erroneously concluded that the rule in *People v Arthur* (22 NY2d 325), to the effect that a defendant in police custody may not waive his constitutional rights in the absence of his attorney, does not become operative until the defendant has actually retained counsel in the matter which provides the basis for the arrest, and that under the circumstances of this case, the police were not, in any event, proscribed from interrogating the defendant and obtaining a statement in relation to an *unrelated* criminal prosecution. The defendant's oral statement should have been suppressed. In *People v Buxton* (44 NY2d 33), the Court of Appeals held that where the defendant, while being taken away under arrest, expressed a desire for counsel by telling his superior "Call my wife and call my lawyer", the police could not, thereafter, properly interrogate him in the absence of an attorney. The court there held (pp 36-37): "It is established that if a suspect 'indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning' *(Miranda v Arizona,* 384 US 436, 444-445, *supra).* That defendant's request was made to a third party is of little signifance, *since the request was made in the presence of police.* Under these circumstances, it would be an absurd formality to hold that defendant had not sufficiently indicated his desire for a lawyer. Therefore, we conclude initially that, *having been apprised of defendant's request for counsel,* the police violated his constitutional rights by questioning him, in the absence of an attorney, within less than an hour of his request (see *People v Jackson,* 22 NY2d 446, 452-453; see, also, *People v Noble,* 9 NY2d 571; cf. *Escobedo v Illinois,* 378 US 478, 485-486)." (Emphasis added.) (See, also, *People v Stroh,* 63 AD2d 326, affd 48 NY2d 1000.) In *People v Rogers* (48 NY2d 167), the court declared that a defendant's right to counsel is all-embracing and where police interrogation is conducted in disregard of the defendant's Sixth Amendment rights, any resulting statements by the defendant, whether related to the matter for which he is held in custody or pertaining to an unrelated matter will be precluded. The court held (p 173): "We today recognize that the *Taylor* rule is inconsistent with the principles enunciated in *Hobson and declare that once a defendant is represented by an attorney, the police may not elicit from him any statements, except those necessary for processing or his physical needs.* Nor may they seek a waiver of this right, except in the presence of counsel. *Our acknowledgment of an accused's right to the presence of counsel, even when the interrogation concerns unrelated matters, represents no great quantitative change in the protection we have extended to the individual as a shield against the awesome and sometimes coercive force of the State."* (Emphasis added.) Under the facts herein, we are impelled to conclude that the defendant's desire for the aid of counsel was made known to the arresting police officer prior to the time of this interrogation, and that the statement should have been suppressed for the reason that defendant's waiver of this constitutional right, under the circumstances of this case, could be sought and effectively made only in the presence of counsel. This principle of law was confirmed by the Court of Appeals in *People v Cunningham* (49 NY2d 203, 210): "we affirm our position that the right to counsel in this State includes the right of an accused to have the advice of counsel before making the decision to waive either his privilege against self incrimination or his right to the assistance of an attorney, so that once a defendant in custody invokes his right to counsel, all of the guarantees implicit in that right are brought into play, and a subsequent waiver of rights outside the presence of counsel cannot be given legal effect." The use of the defendant's oral statement resulted from

an impermissible intrusion upon his constitutional right to counsel. The crimes charged involved the use of a firearm and the defendant's oral statement bore heavily in proving his possession of such weapon at the time of the offense. For this reason the error was not harmless beyond a reasonable doubt and reversal is required (see *People v Crimmins,* 36 NY2d 230). The defendant's right to a fair trial was also prejudiced by the following testimony of the arresting officer describing events after the defendant's arrival at the police station: "Q. [Assistant District Attorney] When you got to the 114th, where did you go with Mr. Bolden? A. I brought him upstairs to the *Homicide Squad Office.* Q. What did you do with him there? A. The *homicide* fellows wanted to talk to him *about a crime, a past crime."* (Emphasis added.) An objection to this testimony was promptly made, and the court improperly denied the defendant's motion for a mistrial. This testimony was apparently volunteered by the witness, and, whether intended by him to achieve such result or not, it permitted the jury to conclude that the defendant was not only the subject of the instant prosecution for attempted murder and assault, involving the use of a gun, but that he was also to be questioned while in police custody concerning a homicide. It was testimony which not only tended to show defendant's disposition to crime, but also to suggest to the jury that the defendant was involved in a homicide, a crime with which he was not charged. The prejudicial effect of this testimony upon the minds of the jurors was of a magnitude which could not be eradicated by the trial court's attempted curative instruction, and, under the circumstances, constituted reversible error which mandates a new trial *(People v McKinney,* 24 NY2d 180; *People v Lyles,* 63 AD2d 740). Lazer, J. P., Gibbons and Gulotta, JJ., concur; Cohalan, J., dissents and votes to affirm.