◼ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELIAS KOSTAS BACALOCOSTANTIS, Appellant.—Kane, J.

At about midnight on the evening of May 21, 1983 in the Hamlet of Boiceville, Ulster County, defendant was involved in a shooting which resulted in the death of one person and the serious injury of another. As defendant fled from the scene at high speed in his Cadillac Coupe De Ville, he was stopped by a Deputy Sheriff on night patrol a few minutes later, given a traffic summons for speeding and permitted to proceed. When Deputy Sheriff Paul Van Blarcum arrived at the scene of the shooting shortly thereafter, he was given a description

of the vehicle involved in the shooting. He thereupon advised the State Police of the description of the vehicle he had stopped a few miles up the road. Notice was dispatched to all police vehicles in the area which resulted in defendant and his girlfriend passenger, Elvira Toth, being stopped by Town of Shandaken constables about 12 miles from the scene of the shooting.

Minutes later, State Troopers Bruce Taylor and Art Daley arrived to take defendant and Toth into custody. As the troopers approached defendant's vehicle with revolvers in hand, Daley asked defendant where his gun was located, to which defendant responded that he had thrown it out. Defendant and Toth were then handcuffed, removed from the car and given their *Miranda* rights. Both defendant and Toth, standing nearby, stated that they understood their rights, whereupon Toth said to defendant, "Don't say anything until we see a lawyer," to which defendant responded, "Yes." After a cursory search of the vehicle revealed several spent shell casings, the vehicle was removed to a State Police substation to which both defendant and Toth were taken in separate vehicles. During the course of the ride to the State Police station, upon questioning, defendant admitted his part in the shooting, and then stated that he wanted to call someone when he reached the police station. He was not questioned thereafter in the police vehicle. At the station, the individual he called was his brother. At no time did he ask for or call a lawyer.

Upon his arrival at the station, a search of his person disclosed his possession of two vials of white powder later identified as cocaine. After again receiving his *Miranda* warnings from Investigator Leonard Kasson, defendant gave a detailed description of his activities on May 21 and 22, 1983, which was reduced to writing. In this statement, he admitted shooting two individuals in Boiceville, possession of cocaine in the vehicle and his flight from the scene. An application for a search warrant to search defendant's vehicle was prepared. Attached to this application were defendant's statement, an affidavit from Van Blarcum relating his stopping defendant, and a deposition from Constable Steven Thomas describing his part in the apprehension of defendant. The ultimate search of the vehicle produced live and spent ammunition, a rifle, the speeding ticket and a quantity of white powder, later found to be cocaine. Defendant's motion to suppress his oral and written statements, together with the evidence obtained, was denied and, on the eve of trial, he entered a plea of guilty to

the crime of criminal possession of a controlled substance in the third degree.

It is defendant's contention on this appeal that his response of "Yes" to Toth's statement about a lawyer was an adoption by him of her assertion of the right to and the request for the aid of counsel. He therefore contends that any oral or written statement obtained from him and the fruits thereof, which would include evidence seized from his impounded vehicle, should be suppressed (see, People v Cunningham, 49 NY2d 203; People v Buxton, 44 NY2d 33, 36-37; People v Bolden, 75 AD2d 622).

The resolution of this issue depends upon close scrutiny of the particular factual setting. If defendant's response of "Yes" to Toth's statement concerning a lawyer can be construed as an unequivocal request for an attorney, or, if equivocal, the totality of the circumstances provide the requisite criteria to find that defendant invoked his right to counsel, there would be merit to his argument. However, the mere expression of "Yes", standing alone and without some amplification of its relationship to the proffered statement, does not spawn an unequivocal request by defendant for the assistance of counsel. Moreover, if we deem the response to be equivocal, the totality of the circumstances do not support defendant's contentions. The questioning that took place in the police vehicle on the way to the barracks occurred after defendant was reminded of his *Miranda* warnings and ceased when he stated that he wanted to telephone someone. It is significant that the call ultimately made was to his brother, not to an attorney (see, People v Fuschino, 59 NY2d 91, 100). Furthermore, upon arrival at the police barracks and after again being given his *Miranda* warnings by Kasson prior to questioning, defendant voluntarily reiterated his part in the evening's activities. At no time after the intervention of the police did defendant request the assistance of counsel or act in a manner other than consistent with a desire to fully and frankly cooperate with the authorities in providing the information requested by them. We find the particular facts and circumstances presented not unlike those in *People v Esposito* (115 AD2d 927, *lv granted* 67 NY2d 883) and *People v Tune* (103 AD2d 990, 991) and conclude that, under all the circumstances, defendant not only failed to invoke his right to the aid of counsel, but that his statements and conduct indicate a considered judgment that it be waived (see generally, People v Stark, 103 AD2d 987; People v Campbell, 81 AD2d 300).

However, assuming, arguendo, that defendant's right to

counsel did attach as he contends, the admissibility of the quantity of cocaine found in defendant's automobile would not be affected.

The facts establish, and defendant concedes, that there was probable cause for his arrest as a suspect in the shooting incident in Boiceville. Accordingly, the police could conduct a warrantless search of defendant's vehicle for evidence of that crime at the scene, or secure it to their custody and take it back to the police station for that purpose *(see, People v Orlando,* 56 NY2d 441, 446). In like manner, the discovery of the two vials of white powder on defendant's person at the police station provided sufficient probable cause for a warrantless search of defendant's vehicle for further evidence of contraband. The removal of the vehicle from the State highway to the police station does not bear on the right of the police to conduct such a search *(see, People v Milerson,* 51 NY2d 919, 921). Consequently, defendant's argument that the discovery of the cocaine under the seat of his vehicle was the fruit of an illegal search, since knowledge of the presence of cocaine resulted from information obtained in violation of his right to counsel, must be rejected. Any effort to advance such an argument overlooks the validity of the search of his person at the police station and the concomitant legality of the search of his vehicle, with or without a warrant, resulting in the inevitable discovery of the cocaine *(see, People v Fitzpatrick,* 32 NY2d 499, *cert denied* 414 US 1033; *see also, People v Langen,* 60 NY2d 170, *cert denied* 465 US 1028). Moreover, use of defendant's statements, or other arguably illegally obtained information, as a basis for an application for a search warrant does not impair the validity of the warrant. There is sufficient untainted information, obtained from independent sources, to authorize the search which produced the contraband material *(see, People v Harris,* 62 NY2d 706; *People v Gallina,* 104 AD2d 953, 955, *affd* 66 NY2d 52; *cf. People v Fitzpatrick, supra).* Accordingly, County Court was correct in denying suppression of the quantity of cocaine found in defendant's vehicle *(cf. People v Buffardi,* 92 AD2d 899).

Judgment affirmed. Mahoney, P. J., Kane, Weiss, Yesawich, Jr., and Levine, JJ., concur.