■ The People of the State of New York, Respondent, v Leslie Lubanski, Appellant.—Judgment reversed on the law, plea vacated, defendant's motion to suppress granted and defendant remanded to Livingston County Court for further proceedings on the indictment. Memorandum: Defendant's written statement should have been suppressed because it was obtained in violation of his constitutional right to counsel. Defendant was convicted of first degree sodomy upon his guilty plea following denial of his suppression motion. A Deputy Sheriff in charge of the juvenile aid bureau and a social services worker went to defendant's house in response to a complaint that he had sexually abused a juvenile male. The Deputy informed defendant of the nature of the investigation and read him the *Miranda* warnings. Defendant denied the charge. Three days later the Deputy returned to defendant's house and transported defendant to the Sheriff's office where he again was read his *Miranda* warnings from a printed card. Defendant then stated that he had discussed the case with three lawyers and that he could not afford the $1,000 retainer fee the third attorney had requested. Shortly thereafter defendant signed a written statement in which he confessed to masturbating a male juvenile on several occasions. The suppression court refused to suppress the statement finding that defendant was not in custody and, even if he was, that he did not make an explicit and unequivocal request for the assistance of counsel. We cannot agree.

The critical question is whether defendant in fact asserted his right to counsel. It is well established that if a suspect "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning" *(Miranda v Arizona,* 384 US 436, 444-445). Defendant informed the police that he had spoken to three attorneys and could not afford the retainer fee charged by the third one. Surely, if we strive to exercise "the highest degree of vigilance in safeguarding the right of an accused to have the assistance of an attorney" *(People v Cunningham,* 49 NY2d 203, 207), we should not require more of a defendant to

invoke his right to counsel than what this defendant told the police. The police were aware not only that defendant desired to discuss his situation with a lawyer, but also that he had in fact discussed it with three different lawyers and that he could not afford to retain the third one. Thus, it would be an "absurd formality to hold that defendant had not sufficiently indicated his desire for a lawyer" *(People v Buxton,* 44 NY2d 33, 37; *see also, People v Bolden,* 75 AD2d 622, 624). We conclude that defendant's desire for the aid of counsel was made known to the police in unequivocal and explicit terms *(see, People v Esposito,* 68 NY2d 961, 962; *cf., People v Fridman,* 71 NY2d 845; *People v Hicks,* 69 NY2d 969, *rearg denied* 70 NY2d 796). The proper police response to such information is to cease questioning, particularly since defendant had been informed pursuant to *Miranda* that if he could not afford a lawyer one would be appointed for him.

Although the suppression court found that the defendant was not in custody, we need not address this issue since it is not determinative *(see, People v Skinner,* 52 NY2d 24). As the Court of Appeals has recently observed, "the right to counsel protects persons, whether in custody or not, against the use of incriminating statements made as the result of governmental interrogation" *(People v Velasquez,* 68 NY2d 533, 536). When a suspect is being questioned by police and, as here, unequivocally requests the assistance of counsel on the matter under investigation *(cf., People v Bell,* 73 NY2d 153), all questioning must cease and a subsequent uncounseled waiver of his constitutional rights is invalid *(see, People v Rowell,* 59 NY2d 727, 730; *People v Feneque,* 133 AD2d 646, 647).

All concur except Boomer, J., who dissents and votes to affirm in the following memorandum.

Boomer, J. (dissenting). I respectfully dissent. On the record before us I see no reason to disturb the findings of the suppression court that defendant's testimony was not credible, that he was not in custody when he made his statement to the police, and that he did not unequivocally request the assistance of an attorney.

The record shows that a Deputy Sheriff, accompanied by a caseworker from the Department of Social Services, went to defendant's house to investigate a complaint that defendant had sexually abused a young boy. There, after the Deputy read defendant his *Miranda* warnings, defendant denied the accusation and agreed to take a lie detector test.

Two days later, the Deputy returned to defendant's house

and asked defendant if he would agree to return to the Sheriff's office and speak to Major York about the investigation. Defendant said that he was willing to go but he was baby-sitting that day and would go to the Sheriff's office the next day. The next day, at 11:00 A.M., the Deputy returned to defendant's house. Defendant told the Deputy that he had consulted with attorneys and they had advised him that, due to the fact that the complaint or accusations were made some time ago, the matter could be resolved easily. He told the Deputy that he didn't want to drag the children through a trial or court. He agreed to accompany the Deputy to the Sheriff's office and he rode with the Deputy in the front seat of the police car.

Upon arrival at the Sheriff's office, Major York read defendant his *Miranda* warnings. Defendant indicated that he understood his rights and agreed to speak to the Deputies. He then told Major York that he had talked to a third attorney and could not afford the $1,000 retainer fee. Major York told him that it was up to him if he wanted to discuss it now, but that was solely his choice. Defendant replied that he wanted to talk about it and get it straightened out.

The statement of defendant, after he had twice been given his *Miranda* warnings, that he had previously spoken to an attorney and could not afford the retainer fee, "was not an unequivocal assertion that [he] was requesting the assistance of counsel" *(People v Johnson,* 79 AD2d 201, 204 [Callahan, J., dissenting], *revd on dissenting opn at App Div* 55 NY2d 931; *see, People v Hartley,* 65 NY2d 703, 705). Defendant's statement is at least as equivocal as the statement in *Johnson (supra,* at 202) that the defendant was " 'sick and tired of [the police] bothering her and that she wanted to call a lawyer' ", and the statement in *Hartley (supra)* that the defendant had arranged for an appointment with an attorney *(see also, People v Hicks,* 69 NY2d 969, 970, *rearg denied* 70 NY2d 796; *People v Feneque,* 133 AD2d 646, 647; *People v Bacalocostantis,* 121 AD2d 812, 813-814, *lv denied* 68 NY2d 755; *People v Fox,* 120 AD2d 949, *lv denied* 68 NY2d 812; *People v Sanchez,* 117 AD2d 685, 686, *lv denied* 67 NY2d 950). (Appeal from judgment of Livingston County Court, Houston, J.—sodomy, first degree.) Present—Dillon, P. J., Callahan, Boomer, Green and Davis, JJ.