OPINION OF THE COURT
W. Patrick Falvey, J.
The court herein is faced with an issue, unique due to its factual situation.
*702 The defendant, William Horton Allen, and his codefendant were indicted for two counts of murder in the second degree, both class A-l felonies, in violation of section 125.25 (1) and (3) of the Penal Law; two counts of robbery in the first degree, both class B violent felonies, in violation of section 160.15 (1) and (2) of the Penal Law; one count of criminal use of a firearm in the first degree, a class B violent felony, in violation of section 265.09 (1) of the Penal Law and criminal possession of a weapon in the second degree, a class C violent felony, in violation of section 265.03 of the Penal Law all allegedly committed in Seneca County, New York, on November 6,1986.
The court ordered, after argument of pretrial motions, hearings to test the presence of probable cause for defendant’s arrest, the legality of the search incident thereto, need for suppression of certain evidence obtained from the search and the defendant’s compliance with the agreement on detainers (CPL 580.20).
A pretrial suppression hearing was conducted before me on November 30, 1989. Counsel were each given 10 days in which to file any legal memoranda in support of their respective positions. This decision addresses the issues of the defendant’s arrest and the subsequent seizure of physical evidence. The remaining issues concerning CPL 30.20 and 580.20 are reserved pending receipt of additional submissions.
I
PROBABLE CAUSE AND SUPPRESSION OF EVIDENCE
The court herein is presented with a unique situation in that it must determine the validity of an extraterritorial arrest by Georgia authorities for a Georgia murder charge and the use of certain items seized as a result of that arrest as evidence in the trial of this New York indictment.
The prosecutor in Fourth Amendment questions has the burden of going forward with the legitimacy of police action (People v Malinsky, 15 NY2d 86, 91) but the defendant has the over-all burden of suppression. (People v Alberti, 111 AD2d 860.) Here the People presented three witnesses and the defendant called no witnesses and offered no evidence.
I give full credence to the testimony of the People’s witnesses and make the following findings of facts:
The facts are that the defendant and his codefendant are *703 accused of committing the murder of a female convenience store clerk in Seneca County, New York, on November 6, 1986. It is important to note that no felony complaint was ever filed against the defendant in the New York case. Furthermore, no indictment was returned or filed against the defendant for the New York charges until June 30, 1987. A bench warrant was issued for defendant Allen’s arrest by the Seneca County Court simultaneously with the filing of said indictment, and the defendant was not arraigned on the New York charges until July 7, 1989, 10 days after his initial return from the State of Georgia on June 27,1989.
Defendant Allen and the codefendant were initially arrested, by the Sylvania Police Department in Sylvania, Georgia, on November 8, 1986. The arrest resulted from a teletype alert referred to in Georgia as a "BOLO” ("be on the look out for”) dated November 8, 1986 emanating earlier from the Glynn County, Georgia, police indicating the existence of a warrant for the defendant’s arrest for an alleged murder and armed robbery occurring in Glynn County on October 19, 1986. The "BOLO” contained a description of the defendant as well as his female companion, their car and license plate number. However the arresting officer had no knowledge of the source of the information contained therein. Properly authenticated copies of the arrest warrant issued on November 7, 1986 at approximately 11:30 p.m. by Michael Sapp, Magistrate of the Magistrate Court of Glynn County, were received into evidence as exhibit 2. Neither defendant Allen nor his codefendant were arrested on November 8, 1986 for the New York crimes.
Jack Boyet, detective sergeant of the Glynn County Police, testified that he personally applied under oath to the Magistrate for the defendant’s arrest warrant. He indicated the basis of his application was information received from Seneca County authorities together with ballistic matches of the bullets from the victims of the Seneca County, New York, and Glynn County, Georgia, murders as well as his personal knowledge of the investigation of the Glynn County murder. A warrant for defendant Allen’s arrest was issued and the defendants’ names were entered into the police computer advising the area that a warrant was in effect.
Mark Tretheway, Assistant Chief of Police of Sylvania, Georgia, testified that based on his conversations with the Glynn County dispatcher and a hard copy of the "BOLO” he alerted his officers to set up a surveillance, at a nearby *704 shopping center, to look for the described defendants traveling in a 1974 Buick Century, beige in color with dark top, bearing Missouri license plate No. KJF-454. Tretheway had no personal knowledge of the information on which the arrest warrant was based.
He was soon advised that the defendant was sighted at the shopping center. Since the "BOLO” indicated the defendant might be armed and dangerous, as he kept a .38 revolver under the driver’s seat, the police wanted to surveil the defendant until he got into a less populated area before attempting to apprehend him.
Tretheway was advised that the defendant was on the move. A series of radio broadcasts coordinating the moving surveillance of the defendants ensued. Shortly thereafter, Chief Tretheway was advised that Detective Sergeant Snow had followed the defendant and the defendant’s vehicle had stopped.
Tretheway first observed that the defendant and car fit the "BOLO” description when he arrived at the scene of the stopped vehicles. The defendant’s car was parked on the curb and Detective Snow was behind it. He saw the defendant driver hunching forward behind the steering wheel. He then observed the defendant, after three commands to do so, exit the car in a crouched position and go to the ground. The defendant was very passive and made no extra movements. All officers at the scene had their weapons drawn. Tretheway assisted in placing the defendant under arrest, and advised him in his patrol vehicle that he had a warrant for the defendant’s arrest from Glynn County, Georgia.
Tretheway observed nothing nor did he search the defendant or his vehicle.
Prior to the defendant’s apprehension, Detective Snow of the Sylvania, Georgia Police Department received a call from Assistant Chief Tretheway advising him of the "BOLO” and requesting his assistance in the surveillance.
As Detective Snow proceeded to his surveillance position he observed the subject vehicle. As he passed by in his unmarked car, the defendant, who was driving, looked directly at Snow and Snow looked at the defendant. At that moment Snow observed the defendant leaning forward and to the left in the car making gestures to the floor. He also observed a female passenger in the right front passenger’s seat. The officer positioned himself in back of the defendant’s vehicle and followed it.
*705 The proof is that defendant was not breaking any vehicle and traffic law nor did he try to outrun the officer. However, as Snow followed, the defendant’s vehicle turned abruptly on to a side street and then stopped on its own. Detective Snow stopped behind and took a defensive position behind his open driver’s door. He again observed the defendant leaning forward in the front left seat.
Detective Snow, either alone or in conjunction with other officers, commanded the defendant to exit the vehicle. Although the female exited almost immediately, the defendant did so only after the third command or approximately 20 to 30 seconds after first being told to exit. He observed the defendant exit in a crouched-like position, left foot first following with his right arm, and then he dropped to the ground near the open driver’s door.
Detective Snow approached defendant Allen who was face down on the pavement. As he approached to assist Chief Tretheway in handcuffing the defendant, Snow viewed the front compartment of the defendant’s vehicle through the open door. It was at that time he observed a brown wooden handle of a pistol protruding from the left floor board located partially underneath the driver’s left front bench seat.
After the defendant and the female passenger were taken into custody and secured, Detective Snow, with the assistance of Officer Evans, secured a .38 caliber Llama pistol.
Detective Snow also testified that there was no search of the defendant or his vehicle by any officers of the Sylvania Police Department.
After taking custody of the weapon and vehicle, Snow directed that the vehicle be towed to a secured police area. He followed the tow vehicle to insure same.
At approximately 3:30 p.m. that same day, Detective Jack Boyet of Glynn County took custody of the weapon and vehicle. He then conducted an inventory search of the vehicle at the Sylvania County Police Department. He testified that the search took approximately 2 Vi hours.
Detective Boyet testified as to his department’s policy of taking an inventory of any valuables found in a vehicle when impounded. He stated that an itemized list is only made of jewelry, money and other types of valuables but not all things found. No list was made in this case. However photos were taken before and during the search but none after.
He also testified that there was a lot of clutter, e.g., clothes, *706 blankets, pillows and shoes, in the car and it appeared the defendants were living in the vehicle.
During the inventory Detective Boyet removed all the clothing and found, among other things: three cartons of Pall Mall cigarettes with a New York State tax stamp affixed; a partial box of .38 caliber special hardball ammunition; nine separate .38 caliber rounds; a roll of duct tape; three pairs of gloves; and two maroon ski masks. These items as well as others listed on exhibit A of defendant’s omnibus motion were located in various areas of the car including a suitcase. Also the items were generally not visible due to the clutter.
This issue appears to be one of first impression. No reported New York case addresses the question of probable cause and legality of an extraterritorial arrest, subsequent search and suppression of evidence crucial to the New York indictment based solely on actions by authorities of a foreign jurisdiction, here the State of Georgia, concerning the foreign jurisdiction’s offense.
Here the defendant was arrested by Georgia authorities on a warrant issued by a Georgia court for a Georgia crime occurring before occurrence of the New York crime. Also important is the fact that no New York felony complaint, indictment or warrant was in existence at the time of the Georgia authorities’ seizure of defendant and his property.
I make the following conclusions of law:
The court is of the opinion that even though a Georgia arrest and seizure is involved, if an issue under the Fourth Amendment of the US Constitution is raised and exists in Georgia it also exists regarding the case in New York. Thus a hearing should be held. However, if the Fourth Amendment test is met, this court shall examine both the Georgia and New York statutes regarding proper procedure regarding the subject arrest, search and seizure of the defendant and the property as they pertain to the New York indictment.
The cases are scant when dealing with this situation. Those reviewed deal with circumstances in which a defendant was questioned in New York about a New York crime while the New York authorities knew he was represented by counsel in an unrelated crime in the State of Ohio (People v Bing, 146 AD2d 178); or the admission of a confession where the New York police traveled to Vermont without probable cause or intent to arrest the defendant, a Vermont resident, but after questioning placed him under arrest and returned him to New *707 York without following the statutory guidelines of Vermont for extradition (People v Sampson, 73 NY2d 908); or the application of People v Samuels (49 NY2d 218), regarding admissions obtained by New York police questioning a defendant in Massachusetts after a felony complaint was filed in New York. There the admissions were suppressed. Also compare People v Junco (35 NY2d 419, mod 36 NY2d 712), where New York officers arrested and searched the defendant in New Jersey for a New York crime but they failed to comply with New Jersey statutes providing for arraignment and extradition. There the Court of Appeals said that the arrest and search were good as the officers acted in good faith and did not knowingly or intentionally disregard the law.
The only authority this court found remotely on point comes from Massachusetts in Commonwealth v Sawyer (389 Mass 686, 452 NE2d 1094 [Mass 1983]). This case involved a defendant who was arrested on June 21, 1977 in the State of Maine based on a teletype message from Chautauqua County, New York, indicating the existence of a warrant (based on an indictment) for the defendant’s arrest concerning New York murder and armed robbery charges. A number of items were seized in that arrest. The defendant was subsequently convicted in New York and sentenced to prison. Subsequently, in August of 1979, an informant advised the Maine police that the defendant committed another murder in Massachusetts and buried the body in Maine. After the Maine police talked with the defendant at the Auburn Correctional Facility, the defendant was indicted by a Massachusetts Grand Jury on August 7, 1980 for that murder. The defendant’s pretrial motions alleged that the 1977 searches after his 1977 Maine arrest were carried out by the Maine police without search warrants and without probable cause, i.e., the searches were conducted as a result of an improper warrantless arrest and the evidence derived from those searches should have been suppressed at the Massachusetts trial as "fruits of the poisonous tree”.
Therefore, in determining the validity of the extraterritorial arrest herein, this court as did Sawyer (supra) first looks to the law of the State in which the arrest was made, here Georgia.
An arrest for a crime may be made by a law enforcement officer either under a warrant or without a warrant under certain specified conditions. (Ga Code Annot § 17-4-20 [a].)
Georgia Code Annotated § 17-4-44 on arrest warrants states: *708 "A warrant for arrest may be issued in any county, though the crime was committed in another county. A warrant, once issued, may be executed in any county without being backed or endorsed by a judicial officer in the county where the warrant is executed.”
Georgia Code Annotated § 15-10-2 (1) specifically gives the Magistrate Courts the jurisdiction and power to hear applications for and the issuance of arrest and search warrants. Furthermore, a Magistrate may issue an arrest warrant upon the "information of others given to him under oath [by affidavit].” (Ga Code Annot §§ 17-4-40, 17-4-41 [a]; also see, CPL 120.10, 120.20.)
The Constitution, at a minimum, requires the imposition of a neutral, detached Magistrate in the procedure to make an independent judicial determination of probable cause prior to issuing an arrest warrant. (Penthouse Intl. v McAuliffe, 610 F2d 1353 [5th Cir 1980].) This is also the case in New York as indicated in Bellacosa, Practice Commentary (McKinney’s Cons Laws of NY, Book 11A, CPL 120.20, at 117) which states in part: "The purpose of this section is to ensure that it is the responsibility of the neutral court, and not the police, to determine whether there are sufficient grounds to issue a warrant and permit 'the serious intrusion that the deprivation of another’s liberty constitutes’ ”.
Officers are authorized to make arrests in any county, however, they must bring the arrestee before a Magistrate of the county where the offense was committed. (Ga Code Annot § 17-4-25 [a]; § 17-4-26.) This is similar to CPL 120.90. However, the defendant never made a claim that the police failed to follow these procedures.
The court has examined exhibit 2 and finds that the affidavit of Detective Boyet met the requirements of Georgia Code Annotated § 17-4-41.
Georgia statutes authorize warrantless searches pursuant to lawful arrest for various reasons including discovery or seizure of fruits of the crime or instruments, etc., used in a crime. (Ga Code Annot § 17-5-1 [a].) Furthermore, an inventory of all items seized in a warrantless search shall be given to the person arrested and the judicial officer before whom the arrestee is taken. (Ga Code Annot § 17-5-2.) This is done for caretaking purposes to preserve the property of the accused while in jail and forestall possibility that the accused may later claim some items had not been returned to him. How *709 ever, failing to do so is a ministerial act and does not invalidate the search nor is it grounds for suppression of evidence. (United States v Baty, 486 F2d 240 [5th Cir 1973], cert denied 416 US 942.) New York has no statute concerning inventory involving warrantless searches. However, CPL article 690, more specifically section 690.50 (4) and (5), refers to inventoried property upon execution of a search warrant. There also failure to return and inventory under a search warrant is a ministerial act and does not void the warrant. (United States v Baldwin, 46 FRD 63 [SD NY 1969]; also see, People v La Bombard, 99 AD2d 851; People v Einhorn, 75 Misc 2d 183; People v Jenkins, 71 Misc 2d 938.)
The cases are clear that a vehicle can be stopped when an officer has a reasonable suspicion and those in the vehicle may also be ordered out of the vehicle. (People v Harrison, 57 NY2d 470, 476; see also, People v Atwood, 105 AD2d 1055.) The degree of suspicion required to justify a stop is minimal and nothing like probable cause is required. (People v Ingle, 36 NY2d 413, 415; People v Howell, 111 AD2d 768.)
Here the facts show defendant Allen stopped the car on his own volition. However, Officers Snow and Tretheway had reasonable suspicion to order, at gunpoint, both defendants out of the car based on the information contained in the "BOLO”.
After the stop the defendant herein was placed under arrest based on an arrest warrant issued for the Glynn County, Georgia, murder and not the New York murder.
In making an arrest, a police officer may rely upon information communicated to him by another police officer that an individual is the subject named in a warrant and should be taken into custody in the execution of the warrant. (Whiteley v Warden, 401 US 560; People v Jennings, 54 NY2d 518.) The defendant made no challenge as to the reliability of the information received by the arresting officer. Therefore the People are not required to demonstrate the sender or sending agency itself possessed the requisite probable cause to act. (See, People v Lypka, 36 NY2d 210.) Furthermore, that information may be relied upon by the officer in the field (People v Lypka, supra), and so may the suppression court so long as the defendant raises no specific challenge. (People v Jenkins, 47 NY2d 722.) However, here the content of the "BOLO” upon which the Sylvania County police acted, as opposed to its basis or source, were also proven at the hearing. (People v Dodt, 61 NY2d 408, 419; People v Castrechino, 112 AD2d 773.)
*710 In order to reach the legality of the ensuing warrantless search and seizure as incident to a lawful arrest the court must determine if the arrest itself was lawful. In general, the arrest will be lawful if a valid arrest warrant has been issued. (Abel v United States, 362 US 217.)
The Fourth Amendment, applicable to the States through the Fourteenth Amendment (Mapp v Ohio, 367 US 643), provides: "The right of the people to be secure in their persons * * * against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause”.
There can be little doubt that the defendant herein was "seized” in the Fourth Amendment sense.
Here the defendant contends there was no basis for his arrest in Georgia as it concerned the New York crimes, although he makes no specific claims to this court that the Georgia authorities failed to follow certain procedures. On the other hand, the facts show that the defendant was arrested and the ensuing search of his vehicle resulted from an arrest warrant issued by a Georgia court the day before for his involvement in a Georgia homicide occurring on October 19, 1986 and not the New York murder.
This court concludes that the defendant’s Georgia arrest was based on probable cause resulting from teletype information sent by the demanding Georgia county that an arrest warrant had been issued. Furthermore, the arrest was carried out in sufficient compliance with the required statutory procedures of the Georgia and New York statutes as well as not being in contravention of the Fourth Amendment of the US Constitution.
The court now considers the question of whether the challenged items, all seized during a search which was a direct consequence of the arrest, may properly be admitted into evidence in New York. (See, Abel v United States, supra, at 234-241.)
This court determines that the seizure of the gun was incident to a lawful arrest thus admissible under the Fourth Amendment of the US Constitution because the search was limited to those areas in which a weapon could have been placed or hidden and because the officers, in these circumstances, possessed an articulable and objectively reasonable belief that the occupants were potentially dangerous and might, upon reentering the car, gain immediate control of a *711 weapon secreted in that area. (Michigan v Long, 463 US 1032, 1051; People v Lindsay, 72 NY2d 843; also see, New York v Belton, 453 US 454; People v Belton, 55 NY2d 49, 55 [allowing the search of a passenger compartment, including sealed containers therein, for weapons or property consisting of contraband or being used in the commission of a crime].) Also, since the discovery of the .38 caliber Llama pistol was so close to the arrest, its seizure was proper without regard to whether the officer feared that the particular suspect may have been armed. (United States v Robinson, 414 US 218, 235; People v Weintraub, 35 NY2d 351, 353-354.)
Furthermore, if the driver is validly arrested, the officers can conduct a "full blown” warrantless search of the car at the scene or at the precinct (People v Pleban, 108 AD2d 880; also see, People v Bacalocostantis, 121 AD2d 812, 815; People v Orlando, 56 NY2d 441, 447) as well as locked containers or glove compartments. (New York v Belton, supra; People v Ellis, 62 NY2d 393; People v Langen, 60 NY2d 170, cert denied 465 US 1028; People v Belton, supra.)
In addition, the gun was in plain view of Detective Snow. An officer may seize items which come into plain view, provided the officer is lawfully at the point from which he sees the item. (Coolidge v New Hampshire, 403 US 443, reh denied 404 US 874; People v Milaski, 62 NY2d 147; People v Jackson, 41 NY2d 146.) Here the driver’s door was open and the defendant had just exited from that side as well as having been observed in the front seat. He was near the open door and Detective Snow was assisting Chief Tretheway in arresting the defendant when he viewed the handle of the weapon.
The three cartons of Pall Mall cigarettes with New York State tax stamp affixed; partial box of .38 caliber special hardball ammunition; nine separate .38 caliber rounds; roll of duct tape; three pairs of gloves; and two maroon ski masks, as well as the other items found in the defendant’s vehicle and listed on exhibit A of defendant’s omnibus motion dated September 5, 1989, are admissible as they were also found incident to a valid arrest (reasoning supra), as well as the result of a valid inventory search, incident to incarcerating the defendant arrestee, an exception to the search warrant requirement. (South Dakota v Opperman, 428 US 364; Michigan v Thomas, 458 US 259; Illinois v Lafayette, 462 US 640 [whose rationale was also adopted by New York in People v Gonzalez, 62 NY2d 386].) The facts herein show, by clear and *712 convincing evidence, that there was a valid inventory search and not a "pretext investigative search”.
The prosecutor herein has sustained his burden in showing the legitimacy of the police actions in Georgia evidencing no violation of the defendant’s Fourth Amendment rights or procedural rights of Georgia or New York. The defendant on the other hand has failed to meet his burden of suppression.
Accordingly the defendant’s motion to suppress his arrest and the evidence seized from his vehicle as a result thereof as illegal is in all respects denied.
II
CONCLUSION
The defendant’s motion, as decided herein, is denied in all respects. The court continues to reserve on the defendant’s application concerning denial of a speedy trial under CPL 30.20 and 580.20 pending receipt of further submissions by counsel.