OPINION OF THE COURT
Kenneth R. Fisher, J.
Defendant is charged by indictment with felony driving while *709 intoxicated under subdivisions (2) and (3) of Vehicle and Traffic Law § 1192 (Vehicle and Traffic Law § 1193 [1] [c]). He made numerous omnibus motions, including a motion to suppress his statements to police while in custody in a hospital treatment cubicle, which is determined as set forth below.
Motion to Suppress
Defendant moves to suppress his statements to the police on the ground that admission thereof would violate CPL 60.45. A hearing was held and, for the following reasons, defendant’s suppression motion is granted in part and denied in part.
Officer Paul Romano was, on the evening of January 24, 2000, dispatched to an accident scene on North Union Street near Ontario Street in the City of Rochester, at 10:14 p.m. When he arrived, he saw that two cars were involved. Within a minute of his arrival, Romano spoke with the defendant, who was standing on the street beside one of the vehicles. Romano asked defendant his name and what had happened. Defendant gave his name to Romano, and said that he was driving a Volvo and that the other vehicle pulled out in front of him. Then defendant changed his version by stating that the other vehicle backed into him. Romano asked defendant if he had anything to drink. Defendant replied that he had nothing to drink. Shortly thereafter, Romano performed several field sobriety tests on the defendant, having suspected from the manner of his speech and his bloodshot eyes that defendant had been drinking. After completion of the tests, Romano placed defendant under arrest, handcuffed him and placed him in a squad car. This occurred at 10:25 p.m. Romano transported defendant to Genesee Hospital for treatment of a seriously cut lip.
Sometime between 11:30 p.m. and 11:35 p.m., at Genesee Hospital, after triage and in a treatment cubicle, Romano asked defendant if he would give a blood sample. No prior advisement of rights was attempted. Defendant gave an oral consent and then executed a written consent to the blood test on a hospital form. A nurse took the sample while Romano completed the appropriate paper work. Romano sealed the container and secured the sample. According to the People’s proof, at about 11:45 p.m., in the same cubicle, Romano advised defendant of his Miranda rights from a card marked and introduced into evidence as exhibit No. 1. The card contains all the standard preinterrogation warnings required by the Miranda decision.
It was revealed for the first time on cross-examination, however, that defendant requested an attorney sometime prior *710 to the advisement of Miranda rights. Romano testified that defendant requested a lawyer at about 11:10 p.m., but Romano maintained that it occurred after defendant executed the written consent to the blood test, and after the nurse extracted the blood, which he placed in time after 11:30 p.m. Romano’s police report, attached to the indictment, pegs defendant’s request for a lawyer at 23:09 hours, over 20 minutes before Romano asked for permission to draw a blood sample. Romano testified that, when defendant asked him to call a lawyer, he asked the defendant for the name of the lawyer, but that defendant did not give him the name of the lawyer. Therefore the matter of a lawyer was dropped. Defendant then had Romano call his girlfriend to relay what had happened and that he was “ok.” Thereafter, defendant was administered the Miranda warnings, purportedly waived them, and gave the statements evidenced in the alcohol influence form (which should have been admitted into evidence despite defense counsel’s objection). Defendant remained at the hospital for treatment, and was given an appearance ticket.
It is clear from Romano’s testimony that defendant requested the services of a lawyer prior to administration of the Miranda warnings and the taking of the statements. Unlike in People v Isaac (224 AD2d 993, 994 [4th Dept 1996]), the request was not limited to any particular area, such as the administration of the blood test. Nor was the reference to a lawyer tentative or equivocal, as in People v Fridman (71 NY2d 845 [1988]; People v Hart, 191 AD2d 991 [4th Dept 1993]; People v Davis, 193 AD2d 1142 [4th Dept 1993]; People v Lattanzio, 156 AD2d 757, 759-760 [3d Dept 1989]). Nor was defendant’s statement to Romano that “he wanted to call a lawyer” qualified or “negated” immediately thereafter, as in People v Glover (87 NY2d 838 [1995]; People v Santiago, 133 AD2d 429, 430-431 [2d Dept 1987], affd 72 NY2d 836 [1988]; People v Hayes, 127 AD2d 608 [2d Dept 1987]). The issue is a mixed one of law and fact “that must be determined with reference to the circumstances surrounding the request including the defendant’s demeanor, manner of expression and the particular words found to have been used by the defendant.” (People v Glover, 87 NY2d, at 839.) Although expression of a mere “ ' “desire to consult with an attorney,” ’ ” especially in a noncustodial setting, would not be an unequivocal assertion of the right to counsel (People v Carrier, 270 AD2d 800, 801 [4th Dept 2000]; People v Hayes, 127 AD2d 608 [2d Dept 1987]; People v Johnson, 79 AD2d 201, 204 [4th Dept 1981] [Callahan, J., dissenting], revd on dissenting opn *711 below 55 NY2d 931 [1982]), this was not an expression of this limited variety. Rather, it was an unequivocal assertion of his right to counsel. (People v Lubanski, 148 AD2d 947 [4th Dept 1989]; see also, Cannady v Dugger, 931 F2d 752, 755 [11th Cir 1991] [“ T think I should call my lawyer’ ”]; Robinson v Borg, 918 F2d 1387, 1391 [9th Cir 1990] [“ T have to get me a good lawyer, man. Can I make a phone call?’ ”], cert denied 502 US 868 [1991]; Smith v Ended, 860 F2d 1528, 1529 [9th Cir 1988] [“‘Can I talk to a lawyer?’”], cert denied 498 US 981 [1990].) The waiver itself “may not be used to cast retrospective doubt on the clarity of the initial request itself.” (Smith v Illinois, 469 US 91, 100 [1984].) And nothing in the “events preceding the request or of nuances inherent in the request itself’ suggests ambiguity or equivocation. (Id., at 100.)
The fact that the request came prior to the administration of the Miranda warnings is not determinative. (Miranda v Arizona, 384 US 436, 444-445 [there can be no questioning if “he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking”].) It is true that the Supreme Court has held that a request for Miranda counsel must occur within “the context of custodial interrogation” and be an “expression of a desire for the assistance of an attorney in dealing with custodial interrogation by the police.” (McNeil v Wisconsin, 501 US 171, 178 [1991] [emphasis supplied].) The right to Miranda counsel “must be asserted when the government seeks to take the action [it] protect [s] against,” not “anticipatorily, in a context other than ‘custodial interrogation.’ ” (Id., at 182, n 3; see discussion, Alston v Redman, 34 F3d 1237, 1245-1249 [3d Cir 1994].) However, an invocation of the right to counsel “when interrogation is imminent” is effective. (United States v Grimes, 142 F3d 1342, 1348 [11th Cir 1998] [collecting cases].) Whether viewed as occurring at 11:10 p.m. before the blood test or immediately after the blood test and just prior to administration of the Miranda warnings one-half hour later,[1] defendant’s request of Romano to place a call to a lawyer for him occurred when interrogation was imminent. This case is functionally indistinguishable from United States v Kelsey (951 F2d 1196, 1198-1199 [10th Cir 1991] [discussed in Alston v Redman, 34 F3d, at 1248-1249]). As in Kelsey, it is clear that Romano intended to question de *712 fendant when defendant asked Romano to call a lawyer for him, and therefore the request for a lawyer made before questioning or the reading of Miranda rights was effective. Just as it is clear that the police may not give the Miranda warnings and then ignore a suspect’s assertion of the right to counsel, “[n]or are law enforcement officers free to ignore a suspect’s request for counsel, absent a Miranda warning, where interrogation is imminent and the suspect is in custody.” (United States v Bautista, 145 F3d 1140, 1151, n 7 [10th Cir 1998], cert denied 525 US 911 [1998].) If there are doubts, they “ ‘must be resolved in favor of protecting the constitutional claim,’ Michigan v. Jackson, 475 U.S. [625,] at 633, 106 S.Ct. [1404,] at 1409, and the courts must ‘ “ ‘indulge every reasonable presumption against waiver of fundamental constitutional rights,’ ” ’ id. (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938)).” (United States v Quiroz, 13 F3d 505, 511 [2d Cir 1993]; see also, People v Lubanski, 148 AD2d, supra, at 947-948.)
Even if the some 20- to 30-minute hiatus between defendant’s request to call a lawyer and Romano’s subsequent interrogation of defendant permits a finding that the interrogation was not “imminent” within the meaning of the above-referenced authorities and McNeil v Wisconsin (supra), the conclusion here reached is compelled by the refusal of the Court of Appeals, despite urging (People v Burdo, 91 NY2d 146, 157-159 [1997] [Wesley, J., dissenting]), to recognize a difference between the Miranda right to counsel, which is a prophylaxis assisting the Fifth Amendment self-incrimination privilege, and the Sixth Amendment right to counsel. (Id., at 152 [New York’s right to counsel in the interrogation context arises not just from the privilege against self-incrimination but also from “‘the right to be aided by counsel and due process’”], quoting People v Skinner, 52 NY2d 24, 28 [1980].) It was this difference that motivated the Court in McNeil v Wisconsin (supra) to hold that a defendant’s anticipatory invocation of the Miranda right to counsel is ineffective. If defendant’s request to call a lawyer is ambiguous or equivocal from a strictly Fifth Amendment perspective, in that it might be posited that he was referring at the time only to his Sixth Amendment right to counsel (mere desire to consult with an attorney — People v Carrier, 270 AD2d 800, supra), it cannot be ambiguous from a New York constitutional right to counsel perspective. For if defendant could not be seen as invoking “his wish for the particular sort of lawyerly assistance that is the subject of Miranda” (McNeil v Wisconsin, *713 501 US, at 178), or at least it was ambiguous whether he had done so, he most assuredly was asserting his broader State right to counsel, which protected him from any uncounseled waiver of his Fifth Amendment rights even in a noncustodial setting (People v Burdo, 91 NY2d, at 152), a protection considerably broader than that provided by Edwards v Arizona (451 US 477 [1981]). In other words, while in custody in the hospital cubicle, after defendant’s arrest at the accident scene for drunken driving, the right to counsel asserted by defendant exceeded in scope the limited right to Miranda counsel recognized in McNeil. The right asserted by defendant, stemming as it does from a State constitutionally guaranteed “right to be aided by counsel and due process” in a custodial setting, as Burdo and Skinner make clear, was clearly invoked by the circumstances defendant found himself in, and it specifically protected him from the uncounseled waiver of Miranda rights Romano elicited of defendant only a very short time thereafter. (People v Burdo, 91 NY2d, at 152.) Stated another way, given the scope of defendant’s State constitutional right to counsel, his assertion of it occurred “when the government s [ought] to take the action [it] protect [ed] against,” namely an uncounseled waiver of rights. (McNeil v Wisconsin, 501 US, at 182, n 3.) A similar phenomenon occurred in United States v LaGrone (43 F3d 332, 337 [7th Cir 1994]), but in the context of that Federal prosecution, to which McNeil applies, it did not make a difference in the outcome. This, of course, is a State prosecution in which the principles of McNeil have been laid aside by People v Burdo (supra). This court is bound to apply the broader State constitutional right.[2]
In view of the foregoing, under New York law, all questioning by the police after defendant’s request to call a lawyer was prohibited in the absence of a lawyer present. (People v Burdo, *714 91 NY2d, supra, at 152; People v West, 81 NY2d 370, 374-375 [1993].) The waiver of Miranda rights was, therefore, ineffective because a lawyer was not then present. (People v Esposito, 68 NY2d 961 [1986]; People v Cunningham, 49 NY2d 203, 205 [1980].)
Conclusion
The motion to suppress the statements made in the hospital cubicle is granted.
[Portions of opinion omitted for purposes of publication.]

. Romano’s conflicting testimony was irreconcilable on this point, although the court credits the timing, confirmed by Romano’s nearly contemporaneous recording of it in his report, over his testimony concerning the sequence of events, which was at first tentative.

. Under State law, defendant also would have been entitled to counsel, if he had requested such, for the purpose of advising him whether to consent to the blood test. (People v Gursey, 22 NY2d 224 [1968] [see below].) Because the court finds that defendant’s invocation of his right to counsel occurred when questioning was imminent, and further because defendant did not move to suppress the results of the blood test on the ground that the police failed to afford him access to counsel in connection with their request of him to consent to the blood test (see below), it is unnecessary to reach the question whether defendant’s request to call his lawyer at 11:10 p.m. invoked his rights under Gursey. It is sufficient here to point out that Staté constitutional right to counsel rules were clearly invoked by the circumstances defendant found himself in at 11:10 p.m. that night. The police could not ignore the request and proceed as they did consistent with the State Constitution as interpreted by our Court of Appeals.