■ The People of the State of New York, Respondent, v Gilbert Cleverin, Appellant. [34 NYS3d 136]—

Appeal by the defendant from a judgment of the Supreme Court, Kings County (Dwyer, J.), rendered July 18, 2012,

convicting him of robbery in the second degree (three counts) and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing (Sullivan, J.), of that branch of the defendant's omnibus motion which was to suppress his statements to law enforcement officials.

Ordered that the judgment is reversed, on the law, the defendant's motion to suppress his statements to law enforcement officials is granted, and a new trial is ordered.

The defendant was charged, inter alia, with robbery in the second degree and criminal possession of stolen property in the fifth degree based on allegations that he personally, or acting in concert with others, committed robberies in two stores in Brooklyn. The defendant contends that the hearing court erred in denying that branch of his omnibus motion which was to suppress his statements to law enforcement officials because his waiver of *Miranda* rights (*see Miranda v Arizona*, 384 US 436 [1966]) was not voluntary, knowing, and intelligent due to his mental disability and extremely limited language and comprehension skills.

"[F]or a statement to be admissible, the People must prove a voluntary, knowing, and intelligent waiver of the privilege against self-incrimination" (*People v Aveni*, 100 AD3d 228, 236 [2012] [citation omitted]; *see People v Rodney*, 85 NY2d 289, 292 [1995]; *People v Williams*, 62 NY2d 285, 288 [1984]). "Whether a defendant knowingly and intelligently waived his or her rights to remain silent and to an attorney is determined upon an inquiry into the totality of the circumstances surrounding the interrogation" (*People v Santos*, 112 AD3d 757, 758 [2013] [internal quotation marks omitted]; *see People v Williams*, 62 NY2d at 288), including the defendant's "age, experience, education, background, and intelligence, and . . . whether he [or she] has the capacity to understand the warnings given him [or her], the nature of his [or her] Fifth Amendment rights, and the consequences of waiving those rights" (*Fare v Michael C.*, 442 US 707, 725 [1979]). Where a "person of subnormal intelligence" is involved, "close scrutiny must be made of the circumstances of the asserted waiver" (*People v Williams*, 62 NY2d at 289).

"A defendant's mental deficiency weighs against the admissibility of an elicited confession, so that any such confession must be measured by the degree of the defendant's awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them" (*People v Dunn*, 195 AD2d 240, 242 [1994], *affd* 85 NY2d 956 [1995]). A suspect of

"subnormal intelligence" may effectively waive his or her *Miranda* rights "so long as it is established that he or she understood the immediate meaning of the warnings" (*People v Williams*, 62 NY2d at 287), that is, "how the *Miranda* rights affected the custodial interrogation" (*id.* at 289). Therefore, it must be shown that the suspect "grasped that he or she did not have to speak to the interrogator; that any statement might be used to the subject's disadvantage; and that an attorney's assistance would be provided upon request, at any time, and before questioning is continued. What will suffice to meet this burden will vary from one case to the next" (*id.*).

Contrary to the People's contention, the totality of the circumstances surrounding the interrogation establish that the defendant did not voluntarily, knowingly, and intelligently waive his *Miranda* rights. At the suppression hearing, the defendant presented the testimony of a forensic psychologist who examined him on December 31, 2008, and on October 29, 2010, performed psychological tests, tested the defendant's understanding of the *Miranda* warnings, and reviewed the defendant's educational and psychological history. The defendant's expert testified that the defendant gave his history, reporting that he had emigrated as a child from Haiti, that English was not his first language, and that he had been placed in special education in this country. The psychologist testified that the defendant's IQ score was 53, and characterized him as being mildly mentally retarded or having borderline intellectual functioning. Tests further revealed that the defendant's score on a reading test was at the kindergarten level. The psychologist further noted that her educational evaluation of the defendant was consistent with his records from a residential school for children with cognitive and intellectual deficits that he had attended, as his IQ score was consistently between 40 or 50 and he had been diagnosed as moderately mentally retarded, mentally retarded, or with borderline intellectual functioning. The psychologist's evaluation was also consistent with Kings County records, which reflected that an evaluation of the defendant between the ages of 12 and 14 revealed that he had emigrated from Haiti, spoke only Creole until age 13, had an IQ of 46, and was diagnosed as being moderately mentally retarded. The Kings County records further noted that the defendant was a nonreader of both English and Creole, and that his listening comprehension skills were severely deficient. The psychologist further testified that she tested the defendant's understanding of the *Miranda* warnings and that the defendant did not understand the phrase, "you have the right to remain silent and to refuse to answer any questions,"

and did not understand the phrase "you have the right to consult an attorney before speaking to the police and to have an attorney present during any questioning now or in the future."

The People's expert did not provide an opinion about whether the defendant had been able to understand the *Miranda* warnings. Rather, the People's expert maintained that the *Miranda* warnings have become a part of the national culture, so that people who live in this country can understand the main meaning and immediate import of the warnings without necessarily knowing the exact meaning of the words. The People's expert further opined that being mentally retarded did not preclude the possibility of understanding the *Miranda* warnings and waiving those rights.

We conclude, based upon the totality of the circumstances, that the People failed to meet their burden of establishing beyond a reasonable doubt that the defendant knowingly, voluntarily, and intelligently waived his *Miranda* rights, and thus, the hearing court should have suppressed the defendant's statements on that ground (*see People v Knapp*, 124 AD3d 36 [2014]; *People v Santos*, 112 AD3d 757 [2013]; *People v Aveni*, 100 AD3d 228 [2012]).

The error in admitting the defendant's statement was not harmless beyond a reasonable doubt because the evidence of the defendant's guilt, without reference to the error, was not overwhelming, and there was a reasonable possibility that the error might have contributed to the defendant's conviction (*see People v Jones*, 47 NY2d 528 [1979]; *People v Markman*, 83 AD2d 644 [1981]; *People v MacKenzie*, 78 AD2d 892 [1980]; *People v Brathwaite*, 76 AD2d 931 [1980]; *see generally People v Crimmins*, 36 NY2d 230, 237 [1975]).

The defendant's remaining contention has been rendered academic in light of our determination. Dillon, J.P., Balkin, Hinds-Radix and Connolly, JJ., concur.