Matter of Tyler L. (2021 NY Slip Op 04713)





Matter of Tyler L.


2021 NY Slip Op 04713


Decided on August 18, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on August 18, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
LEONARD B. AUSTIN
BETSY BARROS
PAUL WOOTEN, JJ.


2019-10246
 (Docket No. D-1582-19)

[*1]In the Matter of Tyler L. (Anonymous), appellant.


Janet E. Sabel, New York, NY (Dawne A. Mitchell and Raymond E. Rogers of counsel), for appellant.
Georgia M. Pestana, Corporation Counsel, New York, NY (Ingrid R. Gustafson and Jessica Miller of counsel), for respondent.



DECISION & ORDER
In a juvenile delinquency proceeding pursuant to Family Court Act article 3, Tyler L. appeals from an order of disposition of the Family Court, Kings County (Susan Quirk, J.), dated August 5, 2019. The order of disposition, upon an order of fact-finding of the same court also dated August 5, 2019, made upon the admission of Tyler L., finding that he committed acts which, if committed by an adult, would have constituted the crime of endangering the welfare of a child, adjudicated him a juvenile delinquent and placed him on probation for a period of 12 months. The appeal brings up for review the denial, after a hearing, of the motion of Tyler L. to suppress his statements to law enforcement officials.
ORDERED that the appeal from so much of the order of disposition as placed Tyler L. on probation for a period of 12 months is dismissed as academic, without costs or disbursements; and it is further,
ORDERED that the order of disposition is affirmed insofar as reviewed, without costs or disbursements.
The appeal from so much of the order of disposition as placed the appellant on probation for a period of 12 months has been rendered academic, as the period of probation has expired (see Matter of Connor C., 188 AD3d 1040, 1041; Matter of Majesty S., 167 AD3d 629, 629). However, the appeal from so much of the order of disposition as adjudicated the appellant a juvenile delinquent has not been rendered academic, as there may be collateral consequences resulting from the adjudication of delinquency (see Matter of Majesty S., 167 AD3d at 629; Matter of Dzahiah W., 152 AD3d 612, 613).
In this juvenile delinquency proceeding, the Presentment Agency filed a petition alleging that the appellant, who was then 15 years old, committed acts which, if committed by an adult, would have constituted the crimes of attempted sexual abuse in the first degree, two counts of attempted sexual abuse in the second degree, and endangering the welfare of a minor, with respect to his 11-year-old sister. Upon arrest, the appellant was interviewed by law enforcement officials in the presence of his grandfather. During the 35-minute interview, which was videotaped, the [*2]appellant made certain incriminating statements.
The appellant moved to suppress his statements to law enforcement officials. After a hearing, the Family Court denied the appellant's motion. Thereafter, upon the appellant's admission, the court found that the appellant had committed acts which, if committed by an adult, would have constituted the crime of endangering the welfare of a child. The court thereupon adjudicated the appellant a juvenile delinquent and placed him on probation for a period of 12 months.
The Family Court properly denied the appellant's motion to suppress his statements to law enforcement officials. The Presentment Agency must prove a voluntary, knowing, and intelligent waiver of the privilege against self-incrimination for custodial statements to be admissible (see People v Cleverin, 140 AD3d 1080, 1081). "Whether a defendant knowingly and intelligently waived his or her rights to remain silent and to an attorney is determined upon an inquiry into the totality of the circumstances surrounding the interrogation, including the defendant's age, experience, education, background, and intelligence, and . . . whether he [or she] has the capacity to understand the warnings given him [or her], the nature of his [or her] Fifth Amendment rights, and the consequences of waiving those rights" (id. at 1081 [citations and internal quotation marks omitted]).
Here, the videotape shows that the appellant and his grandfather were brought into an interview room of a police precinct, where Miranda warnings (see Miranda v Arizona, 384 US 436) for juveniles were read and written copies of the warnings were given to the appellant and his grandfather. The videotape also shows that, while the written Miranda form was never signed, both the appellant and his grandfather waived the appellant's Miranda rights after the rights had been read. Contrary to the characterization of our dissenting colleagues, the Miranda warnings were not read in a "pro forma" manner (dissenting op at 6). The videotape demonstrates that the Miranda warnings were read in a manner that was clear and deliberate, and that the appellant and his grandfather understood those rights and voluntarily waived them.
We disagree with our dissenting colleagues' characterization of the opinion of the appellant's expert as uncontroverted. While the appellant's expert in juvenile forensic psychology noted in his report that the appellant tested as having an IQ of 74 and was in the "borderline range" of certain verbal comprehension, perceptual reasoning, reading comprehension, and expressive vocabulary tests, the appellant's expert also stated that the appellant had a basic comprehension and understanding of Miranda rights at the time of his testing consistent with other 15-year-old adolescents of comparable abilities. The conclusion of the appellant's expert that the appellant could not have made an intelligent, knowing, and voluntary waiver of his Miranda rights during police questioning was undermined by evidence of the appellant's completion of a test that required answers to 189 written questions in 20 minutes. Additionally, the expert acknowledged that a 2015 individualized education plan document rated the appellant as a "strong reader" and indicated that the appellant could "retell a story and is able to answer questions based on his reading." Thus, the Family Court's determination that the appellant's Miranda waiver was voluntary, knowing, and intelligent was supported by the evidence and will not be disturbed (see Matter of James W., 130 AD2d 753, 753). The absence of a signed waiver form requires no different result (see People v Aveni, 100 AD3d 228, 236), particularly as, in this instance, the waiver of Miranda rights by the appellant and his grandfather is evidenced by the videotape. Moreover, the Miranda waiver is not rendered infirm by virtue of any familial relationship that the grandfather had with the appellant's sister (see Matter of Kevin R., 80 AD3d 439, 439; Matter of James OO., 234 AD2d 822, 823).
In addition, the hearing evidence demonstrated that the delay in commencing the interrogation was satisfactorily explained as attributable primarily to the transportation of the appellant from his school to the Brooklyn Child Abuse Squad, the delayed appearance of the appellant's guardian, and the efforts made to ensure that the interrogation was recorded by audiovisual equipment (see Matter of Amber B., 76 AD3d 475, 476; Matter of Rafael S., 16 AD3d 246, 246-247). The hearing evidence also demonstrated that the interrogation occurred inside of a designated juvenile room after the appellant, in the presence of his grandfather, was given the proper [*3]Miranda warnings, and they indicated on videotape that they understood those rights (see Matter of Dashawn R., 120 AD3d 1250, 1250-1251).
Further, the appellant's statements were not rendered involuntary by the conduct of law enforcement officials during the interrogation. Under the totality of the circumstances, including the means employed and the vulnerability of the appellant, the hearing evidence demonstrated that the appellant's will was not overborne (see People v Thomas, 22 NY3d 629, 642; People v Black, 172 AD3d 895, 896; People v Gordon, 74 AD3d 1090).
Accordingly, we affirm the order of disposition insofar as reviewed.
LASALLE, P.J., DILLON and AUSTIN, JJ., concur.
BARROS, J., concurs in part and dissents in part, and votes to dismiss the appeal from so much of the order of disposition as placed Tyler L. on probation for a period of 12 months, reverse the order of disposition insofar as reviewed, on the law and the facts, grant the motion of Tyler L. to suppress his statements to law enforcement officials, vacate the order of fact-finding, dismiss the petition, and remit the matter to the Family Court, Kings County, for the purpose of entering an order pursuant to Family Court Act § 375.1, with the following memorandum, in which WOOTEN, J., concurs.
The issue that divides this panel is whether the Presentment Agency established, beyond a reasonable doubt, that the appellant, who was 15 years old with documented subnormal intelligence, voluntarily, knowingly, and intelligently waived his Miranda rights (see Miranda v Arizona, 384 US 436) before giving statements to law enforcement officials during a custodial interrogation. Contrary to the majority's determination, I conclude that the Presentment Agency failed to meet its burden, and, therefore, the appellant's motion to suppress his statements should have been granted.
"Whether a [person] knowingly and intelligently waived his or her rights to remain silent and to an attorney is determined upon an inquiry into the totality of the circumstances surrounding the interrogation, including the defendant's age, experience, education, background, and intelligence, and . . . whether he [or she] has the capacity to understand the warnings given him [or her], the nature of his [or her] Fifth Amendment rights, and the consequences of waiving those rights" (People v Cleverin, 140 AD3d 1080, 1081 [citations and internal quotation marks omitted]; see People v Santos, 112 AD3d 757, 758).
"Where a person of subnormal intelligence is involved, close scrutiny must be made of the circumstances of the asserted waiver" (People v Cleverin, 140 AD3d at 1081 [internal quotation marks omitted]; see People v Williams, 62 NY2d 285, 289). Under such circumstances, it must be established that the person with subnormal intelligence understood the immediate meaning of the warnings, that is, that he or she grasped that he or she did not have to speak to the interrogator; that any statement might be used to his or her disadvantage; and that an attorney's assistance would be provided upon request, at any time, and before questioning is continued (see People v Williams, 62 NY2d at 289; People v Cleverin, 140 AD3d at 1082).
"[O]ver and beyond the ordinary constitutional safeguards provided for adults subjected to questioning, [law enforcement officials] must exercise greater care to ensure that the rights of youthful suspects are vigilantly observed" (People v Hall, 125 AD2d 698, 701; see Matter of Jimmy D., 15 NY3d 417, 421).
At the suppression hearing, the appellant presented the testimony of a forensic psychologist, who tested the intellectual abilities and functioning of the appellant, evaluated the appellant's understanding of the Miranda warnings given to him, and conducted a review of the appellant's educational records. The expert found, inter alia, that the appellant, then 15 years old and in the ninth grade, had a borderline low IQ with overall difficulties in his reading and listening comprehension. The appellant was found to have reading comprehension at a fifth-grade level and listening comprehension at a fourth-grade level. The expert's findings were confirmed by the [*4]appellant's educational records evincing that the appellant was reading at a fourth-grade level. The expert's testing revealed that the appellant had a full scale IQ of 74, correlating with overall intellectual abilities in the fourth percentile. The expert related that the appellant's educational records had previously found the appellant to be in the "Extremely Low" range with an even lower full scale IQ of 69.
The expert's uncontradicted opinion was that the appellant had "fundamental problems" in understanding and comprehending Miranda rights. Specifically, the appellant believed that he had to waive his right to remain silent in order to find out what the detectives were questioning him about. The appellant did not understand what it meant for a statement to be "used against him." Further, he did not understand the role of an attorney in the context of an interrogation.
Given the appellant's young age, low IQ scores, and limited intellectual functioning, there are serious doubts about the appellant's ability to knowingly and intelligently waive his Miranda rights under the circumstances (see People v Patillo, 185 AD3d 46; People v Cleverin, 140 AD3d 1080). Notably, the Presentment Agency did not introduce any expert testimony contradicting the conclusions reached by the appellant's expert forensic psychologist (cf. People v Cleverin, 140 AD3d 1080). The conclusions of the appellant's expert were confirmed by the appellant's educational records showing that he had been selected for an individualized education plan (hereinafter IEP) and had consistently been evaluated as having intellectual disabilities, including a low IQ with reading, listening, and comprehension difficulties.
The Presentment Agency's reliance upon selected findings in the report of appellant's expert, while ignoring the expert's other findings, analysis, and ultimate conclusions, does not undermine the substance of the expert's opinion. The Presentment Agency never called an expert forensic psychologist to render an opinion as to the significance of those findings that the Presentment Agency relies upon to support its argument that the appellant validly waived his Miranda rights. Moreover, it is unclear how the fact that the appellant gave unidentified responses to a specific number of unidentified questions within a certain period of time during the forensic examination bears any relevance to the issue of whether the appellant had the ability to comprehend the Miranda warnings under the circumstances. The forensic examination itself, including the questions and the appellant's responses, are not even in the record. Further, that the appellant was described as a "strong reader" in a single report from a 2015 IEP has only marginal significance given that the IEP records indicated that the appellant, who was in ninth grade, was reading at a fourth-grade level. Indeed, the fact that the appellant was in an IEP program suggests that he had educational disabilities consistent with the analysis and conclusions of the appellant's expert.
Although the appellant's grandfather, who was his guardian, was present during the interrogation, the grandfather had a conflict of interest since he was also the guardian of the alleged victim, the appellant's sister. Although such a conflict is not disqualifying, it is a factor to be considered in evaluating the totality of the circumstances as to the voluntariness of a waiver (see Matter of Kevin R., 80 AD3d 439).
The videotaped interrogation evinces that the appellant's grandfather provided no advice or assistance in any way during the Miranda warnings or throughout the interrogation. To the extent the grandfather participated at all during the interrogation, he made a comment that was intended to assist the law enforcement officers' attempts to deceive the appellant into making a self- incriminating statement, which further highlighted the grandfather's conflict of interest.
Further, it is undisputed that the appellant was arrested at school instead of his home, placed in handcuffs during intervals prior to the interrogation, separated from a guardian for hours between his arrest and the interrogation, and unable to privately consult with his grandfather before the interrogation. At the interrogation, the appellant was seated in the corner of a very small interrogation room next to his grandfather and directly across from two police interrogators.
The videotaped interrogation shows that the juvenile Miranda form was verbally [*5]recited in a pro forma manner. Although the law enforcement officials directed the appellant and his grandfather to write "yes" or "no" and add their initials on the Miranda form, the unsigned Miranda form was pulled away immediately after receiving perfunctory "yes" responses from the appellant and his grandfather. Thus, the appellant's verbal "yes" responses to the Miranda warnings in no way demonstrated his comprehension of the Miranda rights or a voluntary waiver of them (see People v Patillo, 185 AD3d at 50).
Given the totality of the circumstances, including the appellant's young age and subnormal intelligence, as well as the high-pressured atmosphere created by law enforcement officials, the Presentment Agency failed to meet its burden of establishing, beyond a reasonable doubt, that the appellant voluntarily, knowingly, and intelligently waived his Miranda rights. Accordingly, the Family Court should have granted the appellant's motion to suppress his statements to law enforcement officials.
Since the appellant has already served his probationary term, no purpose would be served by remitting the matter for a new fact-finding hearing, and, therefore, I vote to dismiss the petition (see People v Hightower, 18 NY3d 249, 253; People v Dreyden, 15 NY3d 100, 104; Matter of Peter C., 220 AD2d 584, 585).
In light of the foregoing, the appellant's remaining contentions need not be reached.
ENTER:
Aprilanne Agostino
Clerk of the Court